UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FRANCIS J. HARVEY, JR. and
JEAN P. WILHELM,

                                                          07-Civ-6763 (LAP)

                        Plaintiffs,

    -against-

320 OWNERS CORP. and CHARLES LOWERY,
in his capacity as President of 320 Owners Corp.,

                        Defendants
------------------------------------------------------------x

## POINTS AND AUTHORITIES IN OPPOSITION TO
## DEFENDANTS' CROSS-MOTION TO DISMISS

     Plaintiffs submit these points and authorities in opposition to Defendants motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ P. 12 (b)1 and 12(b)(6).

     The Plaintiffs are before this Court upon their complaint that in the proceedings commenced against them in the New York State Supreme Court by the Defendants herein to terminate their tenancy and obtain possession of their cooperative apartment unit Plaintiffs will be subjected to procedures that violate their right to equal protection and due process of law. This is so because the State trial court is obligated by the holding of the State's highest court to apply RPAPL 711(1) as to cooperative tenants in a way that differs substantially from the way it is applied to conventional tenants, and to do so in a manner that deprives the Plaintiffs of their right to be heard and defend. See 40 W. 67th Street v. Pullman, 100 N.Y.2d 147 (2003).

     Defendants' appear to rest their motion to dismiss Plaintiff's Complaint on three footings:

1. Pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted because Defendants do not act under color of state law as required to sustain a cause of action against them pursuant to 42 U.S.C. 1983;

2. Pursuant to Fed. R. Civ. P. 12(b)(1), (1) lack of jurisdiction over the subject matter, because the case and controversy brought to this Court by Plaintiffs is not ripe for adjudication, and;

3. Pursuant to Fed. R. Civ. P. 12(b)(1), (1) lack of jurisdiction over the subject matter, because a United States District Court is ousted of jurisdiction in this matter by the Rooker-Feldman Doctrine.

Defendants motion fails on all grounds upon which they rely.

POINT I

Although Defendants seem to characterize the first branch of their motion as arising under Fed. R. Civ. P. 12(b)(1)--lack of subject matter jurisdiction--it is more appropriately analyzed under Fed. R. Civ. P. 12(b)6)--failure to state a cause of action. It cannot be argued that this Court does not have subject matter jurisdiction of a claim brought before it pursuant to 42 U.S.C. 1983. Whether that claim is properly pled by setting forth the necessary element of "state action" is an issue more appropriate to resolution under Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss for failure to state a claim under 12(b)6) the Court should grant it only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his/her complaint which would entitle him/her to relief. King v. Simpson, 189 F.3d 286 ($2^d$ Cir. 1999). This rule barring the granting of a motion to dismiss has for

many years been carefully adhered to in this Circuit, particularly in civil rights actions. Tarshis v. The Riese Organization, 211 F.3d 30 (2nd Cir. 2000).

While bald assertions and conclusions of law will not suffice to state a claim, see Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996), a district court, before granting a motion to dismiss, must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally. See Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999); Koppel v. 4987 Corp., 167 F.3d 125, 127 (2d Cir. 1999).

The issue to consider is not whether a plaintiff will ultimately prevail. It is not the Court's function on a 12(b)(6) motion to weigh the evidence that might be presented at trial. Instead, the Court must determine only whether the complaint itself is legally sufficient. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

Applying that standard, the Defendants' motion must be denied.

The Plaintiffs have stated facts in their complaint sufficient to demonstrate that the application of RPAPL 711(1) by the highest court of the State of New York will deny them the equal protection and due process of law. 1050 Tenants Corp. v. Lapidus., 39 AD3d 379 [2007])., 2007 NY Slip Op 03558 (1st Dept. April 24, 2007); 40 W. 67th Street v. Pullman, 100 N.Y.2d 147 (2003); Levandusky v. One Fifth Avenue Apartment Corp., 75 N.Y. 2d 530 (1990)[1]. In those rulings, the New York Court of Appeals has established

---

[1] Plaintiffs will not here repeat their arguments regarding the unconstitutional application of RPAPL 711(1) by the New York State Court of Appeals set forth in their Points and Authorities filed in support of their application for a Temporary Restraining Order and Preliminary Injunction. Rather, Plaintiff refers the Court to that document and incorporates said arguments herein as if fully stated.

two classes that receive disparate treatment. One class receives the full due process of law while the other does not. The Plaintiff's herein are plainly members of the disfavored class.

The Plaintiffs have also stated facts in their complaint sufficient to make out the necessary element of a claim under 42 U.S.C. 1983 that the Defendants will violate the Plaintiffs constitutional rights while acting under color of state law.

By calling upon the unconstitutional machinery of the New York State Supreme Court to terminate the Plaintiffs' tenancy and utilize a sheriff or marshal to physically evict Plaintiffs from there apartment, the Defendants certainly act under color of state law in a manner sufficient to sustain a cause of action under 42 U.S.C. 1983.

The threads of argument regarding the presence of "state action" in a claim under 42 U.S.C. 1983 are numerous and tangled. Defendants' attack on Plaintiffs' Complaint herein picks up the wrong thread when it relies on <u>San Francisco Arts and Athletics v. United States Olympic Committee</u>, 483 U.S. 522 (1987) and <u>NBC v. Communications Workers of America</u>, 860 F.2d 1022 (11th Circuit 1988). In neither of those cases is Plaintiffs' theory of "state action" addressed. For example, Plaintiffs make no assertion that the Defendants are "state actors" because they were performing a public function. Plaintiffs do not claim that the New York State government exercised coercive power or provided such significant encouragement to the Defendants that their choice to terminate the Plaintiffs' tenancy must in law deemed to be that of the state.[2] Plaintiffs point to no

---

[2] Plaintiffs make no argument under the Constitution of the United States concerning the decision of the Board of Directors of the Defendant Cooperative Corporation to terminate their tenancy. Plaintiffs constitutional complaint focuses on the state court procedure the defendants must use to enforce that decision. While the proprietary lease between the parties contains a provision that permits the Board of Directors of the Defendant Cooperative Corporation to take the decision to terminate the Plaintiffs tenancy

nexus between the Defendant and the State that was so close that they became entwined in a symbiotic relationship that would justify a finding that the Defendants and the State were engaged in a joint action when the decision to terminate the Plaintiffs' tenancy was taken by the Defendant Cooperative Board of Directors. Nor do Plaintiffs claim that the activities of co-operative corporations are so highly regulated by New York State that they necessarily engage in "state action" in all their activities.

The correct thread of argument, and the one upon which Plaintiffs rely, begins with Sniadach v. Family Finance, 395 U.S. 337 (1969), the case in which the Court found that the use of pre-judgment attachment of a worker's wages by a private creditor who resorted to Wisconsin's unconstitutional judicial procedures constituted "state action" sufficient to find a violation of Plaintiff's right to due process of law under the 14th Amendment of the United States Constitution. The thread continues through Fuentes v. Shevin, 407 U.S. 67 (1972) and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975). In each of these three case the Court invalidated under the 14th Amendment the application by the State Courts of a statute that permitted a private party to obtain a garnishment of wages and assets without notice and an opportunity for a hearing.[3] Just as in the case now before this Court, it was the private party's resort to the state judiciary's

---

because it perceives the Plaintiffs as tenants have engaged in objectionable conduct, the proprietary lease contains no provision making that decision self-executing. Like every other landlord in the State, the Defendant Cooperative is obligated to go to court to obtain a judgment of possession and a warrant of eviction to obtain possession of any tenants' apartment. It is that procedure the Plaintiffs challenge herein under 42 U.S.C. 1983.

[3]Among the cited cases only Fuentes v. Shevin arose under 42 U.S.C. 1983. The others rested only on the 14th Amendment itself. However, it is clear that in a § 1983 action, the statutory requirement of action "under color of state law" and the "state action" requirement of the Fourteenth Amendment are identical. Lugar V. Edmondson Oil Co., 457 U.S. 922 (1982)

unconstitutional application of a state statute and procedure that provided facts necessary for a finding of "state action."

Lugar V. Edmondson Oil Co., 457 U.S. 922 (1982) neatly ties the Sniadach, Fuentes and North Georgia threads together.[4] In Lugar the Court explains that in each of those cases state agents aided the creditor in securing the disputed property; but the federal issue arose in litigation between a private creditor and debtor in the state courts and no state official was named as a party. Nevertheless, the Court entertained and adjudicated the defendant-debtor's claim that the procedure under which the private creditor secured the disputed property violated federal constitutional standards of due process. The Court observed that if a defendant debtor in state court debt collection proceedings can successfully challenge, on federal due process grounds, the plaintiff creditor's resort to the procedures authorized by a state statute, it is difficult to understand why that same behavior by the state-court plaintiff should not provide a cause of action under § 1983. If the creditor-plaintiff violates the debtor-defendant's due process rights by seizing his property in accordance with statutory procedures, there is little or no reason to deny to the latter a cause of action under the federal statute, § 1983, designed to provide judicial redress for just such constitutional violations. The Court found the procedural scheme created by the statute obviously is the product of state

---

[4]Defendant's proposition "that a question exists whether Lugar's initial test still exists in light of the fact that the recent Supreme Court cases have not mentioned or used it" is not supported by the citation in their Memorandum of Law of National Broadcasting Co., Inc. v. Communications Workers of America, 860 F.2d 1022 (11th Cir. 1988). That observation by the 11th Circuit is pure dicta, contained in a footnote to its opinion. In any event the Supreme Court has made mention of Lugar as recently as 1999 in American Manufacturers. Mutual Insurance Co. v. Sullivan, 526 U.S. 40. In 1991 Lugar provided the framework for the Court's analysis in Edmonson v. Leeville Concrete Co., 500 U.S. 614. The Second Circuit made reference to Lugar as recently as 2005 in Flagg v.Yonkers Savings And Loan Association, 396 F.3d 178. In any event Lugar has to date neither been discredited nor overruled.

action. that is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the second element of the state-action requirement is met as well. The Court noted, "as is clear from the discussion in Part II, we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment". The Court emphasized, "the rule in these cases is the same as that articulated in <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970) in the context of an equal protection deprivation, noting that private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'"

Upon the above-stated reasoning the Supreme Court in <u>Lugar</u> held that the Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state-created attachment procedures. It stated that the holding of the lower court was contrary to the conclusions we have reached as to the applicability of due process standards to such procedures. In summary, petitioner was deprived of his property through state action; respondents were, therefore, acting under color of state law in participating in that deprivation. Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute.

What <u>Lugar</u> teaches is that by resorting to a constitutionally defective judicial procedure, especially one that in the end required the assistance of an official of the state

to enforce, such as a marshal or sheriff, a private litigant acts under color of state law in sufficient measure to support a finding of "state action" to support a claim under 42 U.S.C. 1983.

The Second Circuit applied the Lugar analysis in Texaco Inc. V. Pennzoil Co., 784 F.2d 1133 (2nd Cir. 1986), rev'd on other grounds at 481 U.S. 1 (1987) and upheld Texaco's claim under 42 U.S.C. 1983, finding Pennzoil to be acting under color of state law. It concluded, as the Supreme Court did in Lugar, that the "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment" and § 1983.

The private status of the parties in Texaco Inc. V. Pennzoil Co. mirrors the status of the parties in the case now before this Court. As in that case, the matter now before this Court is not one where the private party Defendants are alleged to be state actors merely because they brought suit in a state court and sought a judicial ruling. See Dennis v. Sparks, 449 U.S. 24 (1980); Girard v. Girard, 530 F.2nd 66 (2d Cir. 1976). Nor is it a case in which a private party is ordinarily held not to be acting under of color of state law when he/she seeks to misuse a state procedure that is in of itself lawful and constitutional[5]. See Dahlberg v.Becker, 748 F.2d 85, 92-93 (2d Cir. 1984). Cf. Parratt v. Taylor, 451 U.S. 527 (1981).

Just as in Texaco, the Plaintiffs here are faced with a situation in which the state court does not merely provide the Defendant Cooperative Corporation a neutral

---

[5] Insofar as petitioner alleged only misuse by respondents of Virginia law, the Court held he did not state a cause of action under 42 U.S.C. 1983, but challenged only private action. However, insofar as the Petitioner's complaint challenged the state statute as being procedurally defective under the Due Process Clause, he did present a valid cause of action under § 1983. Lugar V. Edmondson Oil Co., 457 U.S. 922 (1982)

disinterested forum. Instead, the Supreme Court of the State of New York is obligated to apply a statute (RPAPL 711(1)) and the procedures thereunder in the unconstitutional manner dictated by the state's highest court in 40 W. 67th Street v. Pullman, 100 N.Y.2d 147 (2003). As soon as the Defendants opted to employ this constitutionally defective machinery of the State of New York to give force and effect to the Cooperative Corporation's private decision to terminate the Plaintiffs' tenancy and employ the sheriff or marshal to execute the Court's warrant to evict them from their home, they have acted under color of state law in a manner sufficient to sustain Plaintiff's claim under 42 U.S.C. 1983.

.                                              POINT II

Plaintiffs 42 U.S.C. 1983 claims are ripe for review by this Court.

Defendants' reliance on the line of cases that begins with Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985) takes us down the wrong path. Those cases, as this Court itself recognized in Dix v. City of New York, 2002 WL 31175251 (S.D.N.Y. Sept. 30, 2002), establish a set of rules to analyze "ripeness" only in the highly specialized context of land use challenges. See also Murphy v. New Milford Zoning Commission, 402 F.3d 342 (2d Cir. 2005); Dougherty v. Town of North Hempstead Board of Zoning, 282 F.3d 83 (2d Cir. 2002).

The more general approach to the question of "ripeness," which must be employed in this matter, begins not with Williamson, but with Abbott Laboratories v. Gardner, 387 U.S. 136 (1967). See Liberty Cable Co., Inc. v City of New York, 893 F.Supp. 191 (S.D.N.Y. 1995), aff'd 60 F.3d 961 (2d Cir. 1995). Although Abbott arose in the field of administrative law it also provides the basis of decision in all other general areas of

-9-

federal court litigation.

Whether an administrative law case or not, the analysis is the same. Ehrenfeld v. Mahfouz, 489 F.3d 542 (2d Cir. 2007); Hormel Food Corp. v. Jim Henson Productions, 73 F.3d 497 (2d Cir. 1996). The Court must evaluate the issue presented to it both for its fitness for judicial decision and the hardship to the parties of withholding court consideration.

In Abbott Labs and subsequent cases, the Supreme Court has consistently held that questions of statutory interpretation that would not benefit from further factual development of the issues presented are particularly suited for adjudication and, therefore, ripe for review. Whitman v. American Trucking Associations, Inc., 531 U.S. 457 (2001).

The case the Plaintiffs herein now bring to this Court concerns a statute, RPAPL 711(1) that has been definitively interpreted by the highest court of the State of New York. The Supreme Court of the State of New York, the trial level court in which the Defendants herein have already commenced an action to obtain possession of the Plaintiffs' apartment, is obligated to apply RPAPL 711(1) precisely as the Court of Appeals has declared in 40 W. 67th Street v. Pullman and its progeny. This Court is bound and must accept the meaning and application of RPAPL 711(1) as interpreted by the New York Court of Appeals. Mullaney V. Wilbur, 421 U.S. 684 (1975); West v. A.T. &T. Co. Inc., 311 U.S. 223 (1940). See also Cunningham v. California, 549 U.S. ___, 127 S. Ct. 856 (2007).

No further facts need be shown to develop the record in this case. Whitman v. American Trucking Associations, Inc., supra. The constitutional questions here are not

entangled in any remaining interpretation of state law. All that is left for this Court to do is to pass on the purely legal question of whether the state law, RPAPL 711(1) as clearly set out by New York's highest Court, passes constitutional muster.  In U.S. v. Quinones, 313 F.3d 49 (2d Cir. 2002), the Court held a purely legal question, such as the one now before this Court in the instant case, is eminently fit and ripe for judicial review.

The Plaintiffs here also satisfy the second prong of the Abbott test for ripeness-- the hardship to the parties of withholding court consideration. This test overlaps the Article III requirement that a federal court may not hear any case unless it presents an actual case or controversy. It frequently gets entangled as well with the issue of standing.

In other words, a federal court cannot entertain a claim that is based upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all.  Thomas v. City of New York, 143 F.3d 31 (2d Cir. 1998);  Hormel Food Corp. v. Jim Henson Productions,, *supra.*;  Thomas H.  Lee Equity Fund, L.P. v. Bennett, ----F.Supp.2d— (S.D.N.Y. 3-27-2007, 05 Civ. 9608 (GEL))

The instant Plaintiffs case presents an actual concrete dispute affecting the cognizable current concerns of the parties within the meaning of Article III and is, therefore, ripe within the constitutional sense. There is no speculation to be had about the event that will cause harm to these Plaintiffs. The Defendants herein have already actually commenced a proceeding in the Courts of the State of New York against them.

The outcome of the State proceeding instituted by the Defendants is not relevant to Plaintiffs constitutional claims in this Court, and they need not await the outcome to satisfy the test of ripeness. They are entitled to have the termination of their tenancy litigated in a constitutional forum. Thomas v. Union Carbide Agricultural Products Co.,

473 U.S. 568 (1985). As RPAPL 711(1) is presently applied by New York's highest Court, Plaintiff's will be not be afforded that opportunity if this Court does not now intervene to pass on Plaintiffs' constitutional claims.

<u>Thomas v. Union Carbide Agricultural Products Co.</u>, *supra,* arose in the context of a challenge to the commencement of an arbitration proceeding made mandatory by statute. The Court's reasoning is equally applicable to the matter now before this Court. In <u>Thomas</u>, the Supreme Court held that the petitioner had an independent right to adjudication in a constitutional forum. It observed that it is sufficient for purposes of a claim under Article III challenging a tribunals's jurisdiction that the claimant demonstrate it has been or inevitably will be subjected to an exercise of unconstitutional jurisdiction. It stated, "One does not have to await the consummation of threatened injury to obtain relief."

The Plaintiffs now before this Court have already suffered harm, and will continue to suffer, by virtue of the fact that the Defendants' herein have instituted a State Court action that will inevitably proceed in an unconstitutional manner. To compel the Plaintiffs to defend against the termination of their tenancy in a State forum that will not afford them equal protection and due process of law exposes them to undue expense, anxiety and uncertainty. Requiring them to challenge the constitutionality of the State Court's application of RPAPL 711(1) through New York's appellate system will take them years and be extremely costly. At the end, Plaintiff's only opportunity to obtain a federal review of their constitutional claims will be to petition the United States Supreme Court for certiorari. Given the extremely low percentage of cases the United States Supreme Court agrees to hear every term, that opportunity may well prove ephemeral.

The Plaintiffs' case is also "prudentially" ripe for review by this Court. Plaintiffs will be inevitably harmed if their equal protection and due process of law claims are decided later. Their constitutional rights will certainly be undermined by any delay in this Court's consideration of their claims. Ehrenfield v. Mahfouz, 489 F.3d 542 (2d Cir. 2007). The Defendants herein have already commenced an action against Plaintiffs in State Court. The imminence of the termination of these Plaintiffs' tenancy and their eviction from their home provides a sufficiently ripe case or controversy for this Court to hear. Escelara v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970).

This Court may not now relegate these Plaintiffs to the State Courts for resolution of their constitutional claims.

There is no requirement that Plaintiff's exhaust their state remedies before coming to a federal court to vindicate their constitutional rights under 42 U.S.C. 1983. Not only are the Plaintiff's claims ripe for review, but Congress has also clearly established the federal courts as the primary forum for the vindication of federal rights, and has imposed on them the duty to give due respect to a plaintiff's choice of that forum. Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968). Escape from that duty is not permissible merely because state courts are equally responsible for the enforcement and protection of federal constitutional rights.[6] If a state

---

[6] The judge-made doctrine of abstention, first fashioned in 1941 in Railroad Commission v. Pullman Co., 312 U.S. 496, sanctions federal court abstention from deciding constitutional claims only in narrowly limited "special circumstances." One of the "special circumstances" is the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question. Here we have here no question of a construction of RPAPL 711(1) that would avoid or modify the constitutional question. The state's highest court has already construed it in a way that is unconstitutional. There is no reasonable likelihood that again confronted with the issue the New York Court of Appeals would alter that approach. Indeed, there is Plaintiffs have no assurance that the New York Court of Appeals, a court that hears only those cases it deems worthy of review, would ever grant them leave to appeal in the State Court matter commenced by the Defendants.

statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit. To force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect violation of the very constitutional right he seeks to protect. Zwickler v. Koota, 389 U.S. 241 (1967); Vermont Right to Life Committee V. Sorrell, 221 F.3d 376 (2nd Cir. 2000). Indeed the very purpose of 42 U.S.C. 1983 is to interpose the federal courts between the States and the people, as guardians of the peoples federal rights. Patsy v. Board of Regents, 457 U.S. 496 (1982).

For all the above stated reasons, the Court must find Plaintiffs' Complain ripe for review and retain jurisdiction.

## POINT III

Defendants' argument that this Court should decline to hear the Plaintiffs' constitutional complaint because of the Rooker-Feldman doctrine[7] need not detain us long.

The doctrine is rarely applied and is to be narrowly construed. It is confined to cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments. Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

---

[7]Rooker v. Fidelity TrustCo., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Defendants' first asserted basis to invoke Rooker-Feldman is simply misplaced. They argue "Plaintiffs improperly look to this Court to . . . reverse both the Pullman decision and related case law. This position widely misses the mark. To state the obvious first, the Defendants herein were not parties to Pullman or any of its progeny. Rooker-Feldman plainly has no application to a federal suit brought by a non-party to a state suit. Exxon Mobile Corp. v. Saudi Basic Industries Corp, *supra,* citing Johnson v. DeGrandy 512 U.S.997 (1994). Second, the Plaintiffs herein do not ask this Court to reverse or even interpret Pullman or the related New York State case law. The Plaintiffs invoke the jurisdiction of this Court for a ruling that the clearly enunciated application of RPAPL 711(1) by New York State's highest court violates their rights under the United States Constitution. As discussed above, it is the Plaintiffs right to seek that relief in this Court and the Court's duty to entertain their complaint.

Defendants next argue "Plaintiffs improperly look to this Court to reverse . . .the State Court's denial of temporary and preliminary relief. Presumably, the Defendants are making reference to the action these Plaintiffs filed in the New York State Supreme Court, New York County on or about July 7, 2007, seeking a temporary restraining order to prohibit the Board of Directors of the Defendant Cooperative Corporation from holding a meeting to vote on the termination of Plaintiffs' tenancy. Francis J. Harvey and Jean P. Wilhelm v. 320 Owners Corp, Index No. 109415-2007[8]

      The Plaintiffs' state court action and the action now before this Court could not be more different. In the state court, Plaintiffs sought to enjoin a meeting of a

---

[8] A copy of that Complaint is attached to Defendants Cross-Motion

Cooperative Board convened to vote to terminate their tenancy. In the instant case, Plaintiffs' seek to have the application of RPAPL 711(1) by New York State's highest Court declared unconstitutional. Examination of Plaintiffs' Complaint in that action makes clear that they raised no federal or constitutional claim in support of their application for relief in the state court. They sought to block the meeting of the Board on pure factual grounds based strictly on the application of New York State law. As a result, there could not have been, and there was not, any determination of a federal or constitutional claim that could be appealed to this or any other court.

The applicability of the Rooker-Feldman doctrine turns not on the similarity between the Plaintiffs' state court and federal court claims. A plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not run afoul of the doctrine for that reason alone. If the injury caused by the state court judgement is different that the injury complained of in federal court the plaintiff is not barred by Rooker-Feldman. See Mckithen v. Brown, 481 F.3d 89 (2d Cir. 2007). In the Plaintiffs' federal action now before this Court they complain of constitutional injuries. In the state court action, they did not.

Lastly, there was no final judgement rendered against the Plaintiffs in the state court action.[9] All that happened was that their application for a Temporary restraining

---

[9] On the morning of July 10, 2007, the parties appeared in the Supreme Court of the State of New York, New York County on Plaintiff's application for a Temporary Restraining Order enjoining the board from holding its special meeting scheduled for that afternoon. That application was denied. Justice Braun held that Plaintiffs' application was pre-mature because the outcome of the meeting was too speculative. He relied on the wide discretion permitted Cooperative Corporations in such matters under the business judgment rule as set forth in 40 W. 67th Street v. Pullman, 100 N.Y.2d 147 (2003). The Board met on the afternoon of July 10, 2007, and voted to terminate the Plaintiffs' tenancy. Considering their state court action as then pled moot, Plaintiffs voluntarily discontinued it on July 23, 2007. They came to this Court on July 26, 2007 with their constitutional claims.

order was denied. The matter did not proceed to a determination of the Plaintiffs' application for a preliminary injunction or to judgment. Such a decision cannot be deemed to be a ruling on the merits of the Plaintiffs claims and the Plaintiffs cannot be characterized as "state court losers" for purposes of the Rooker-Feldman doctrine. Mckithen v. Brown, 481 F.3d 89 (2d Cir. 2007).

To the extent Defendants may argue the Rooker-Feldman doctrine applies because there is presently pending in the New York State Court an action that parallels this federal court action, they are simply wrong. This is especially so because Plaintiffs arrived in this Court before defendants filed the currently pending parallel state court action. Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, *supra*, citing McClellan v. Carland, 217 U.S. 268 (1910) and Doran v. Salem Inn, Inc., 422 U.S. 922 (1975).

## POINT IV

As argued in the Plaintiff's initial "Points and Authorities" filed in support of their application for a Temporary Restraining Order and Preliminary Injunction, Plaintiffs have met the standard required to preserve the status quo so that they should protected from irreparable injury until the merits of their claims can be addressed by this Court. They will suffer irreparable injury if the injunction is not granted., there is a substantial likelihood of success on the merits, they have raised sufficiently serious questions going to the merits to make them a fair ground for litigation and, the balance of hardship tip decidedly toward them Jackson Dairy v. H.P. Hood and Sons, 70 F.2d 70 (2d Cir. 1979); Schiavo ex rel Schindler v. Schiavo, 403 F.3d 1223 (11th Cir. 2005).

An injunction must also be issued in this matter on the additional ground that it is

necessary to aid the jurisdiction of the Court.

Since Plaintiffs came to this Court upon the instant complaint, the Defendants have instituted an action against them in the New York State Supreme Court seeking possession of their apartment.

The question of whether federal jurisdiction exists is not always free from doubt, and a federal court, as in the instant case, sometimes has to devote a substantial and lengthy period to examine and determine the facts and the law before concluding whether jurisdiction is appropriate. Thus, it follows that "a court has jurisdiction to determine its own jurisdiction." <u>United States v. United Mine Workers of America.</u>, 330 U.S. 258, 292, (1947). Therefore, while conducting appropriate proceedings to determine whether it has jurisdiction a federal court may issue an injunction to preserve the status quo. <u>In re Dairy Mart Convenience Stores, Inc.</u>, 411 F.3d 367 (2nd Cir. 2005). <u>See also</u> <u>Abortion Rights Mobilization, Inc. v. Baker (In re United States Catholic Conference)</u>, 824 F.2d 156, 162 (2d Cir. 1987).

Federal courts have authority under the All-Writs Act, 28 U.S.C. § 1651 (1982), to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. Similar language appearing in the Anti-Injunction Act, 28 U.S.C. § 2283 permits injunctions against actions pending in state court "necessary in aid of the federal court's jurisdiction. This provision permits a district court to enjoin actions in state court where necessary to prevent the possible relitigation of a federal judgment. <u>United States v. New York Telephone</u>, 434 U.S. 159 (1977), notwithstanding the fact that the parties to the original action could invoke res judicata in state courts against any

subsequent suit brought on the same matters. <u>Redac Project 6426, Inc. v. Allstate Ins. Co.</u>, 412 F.2d 1043 (2d Cir. 1969). Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. <u>Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281 (1970).

In the instant case, unless this Court preserves the status quo, it may well be faced before it acts on the question of its own jurisdiction with a decision in the state Court action filed by the Defendants that would essentially deprive it of jurisdiction to hear Plaintiffs' constitutional claims.

## CONCLUSION

For the above-state reasons, Defendants motion to dismiss must be denied and the preliminary relief sought by the Plaintiffs must be granted so that the status quo may be maintained pending the resolution of their constitutional claims.

Dated: Brooklyn, New York
      September 21, 2007

                              Respectfully Submitted

                              STEPHEN A. SOMERSTEIN (SS-0434)
                              Attorney for Plaintiffs
                              Francis J. Harvey, Jr. and
                              Jean P. Wilhelm
                              292 Garfield Place
                              Brooklyn, NY 11215
                              (718)369-2273