UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
FRANCIS J. HARVEY, JR. and                            Civil Action No.
JEAN P. WILHELM,                                           07-Civ-6763 (LAP)
                                          Plaintiffs,

              -against-

320 OWNERS CORP. and CHARLES LOWERY,
In his capacity as President of 320 Owners Corp.,

                                          Defendants.
--------------------------------------------------------------------------------X


## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW


KAGAN LUBIC LEPPER LEWIS
GOLD & COLBERT, LLP
200 Madison Avenue, 24th Floor
New York, New York 10016
(212) 252-0300

<u>TABLE OF CONTENTS</u>

<u>HEADING</u>                                                                      <u>PAGE</u>

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENTS                1

    Cooperative Owners' and Traditional Tenants' Relationships with Their
    "Landlords" Are Distinct                                              3

    The Competent Evidence Standard and *Pullman*                         9

ARGUMENT                                                               10

POINT I

EQUAL PROTECTION DOES NOT APPLY, OR IS SATISFIED                       10

POINT II

DUE PROCESS IS NOT REQUIRED HERE, OR IS SATISFIED                      13

CONCLUSION                                                            19

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENTS

Defendants' Supplemental Memorandum of Law demonstrates that the Equal Protection and Due Process provisions of the Fourteenth Amendment of the United States Constitution either do not apply here or have been satisfied. As such, defendants' cross-motion to dismiss must be granted and plaintiffs' preliminary injunction motion denied.

Plaintiffs' entire case hinges and falls on their argument that the New York Court of Appeals' unanimous 2003 decision that the well established "business judgment rule" satisfies the "competent evidence" standard of RPAPL § 711 for cooperative corporations, violates Constitutional Equal Protection and Due Process. *See* 40 West 67th St. v. Pullman, 100 N.Y.2d 147, 790 N.E.2d 1174, 760 N.Y.S.2d 745 (2003). As shown herein and in the other papers submitted by defendants, Constitutional Equal Protection does not apply because cooperative owners are not "similarly situated" as traditional tenants and even if they were "similarly situated", the rational basis standard applies and is satisfied.

Indeed, the unanimous New York State Court of Appeals was "satisfied that the relationships among shareholders and cooperatives are sufficiently distinct from traditional landlord-tenant relationships that the statute's [(RPAPL §711's)] 'competent evidence' standard is satisfied by the application of the business judgment rule." Pullman, at 155, 790 N.E.2d at 1180, 760 N.Y.S.2d at 750. The differences between cooperative shareholders' and traditional tenants' relationships with their "landlords" are explained herein.

As for Due Process, defendants maintain that cooperative corporations are more akin to secured UCC creditors who can foreclose their security interests in cooperative apartments under their private agreements with cooperative owners without any required Constitutional Equal Protection or Due Process. The private parties in the few cases cited by plaintiffs where Due Process was required, were different in that they were taking another's property by means of state statute. A cooperative lease termination for objectionable conduct is pursuant to a private contract, not pursuant to any state statute.

Even if Constitutional Due Process was required here, it has been satisfied. Under Pullman and its progeny, notice and opportunity to be heard before a termination decision, is provided and satisfies any process that is due to a cooperative owner. Before defendant's board of directors unanimously voted for termination, there was a board meeting which plaintiffs, their son and attorney attended and addressed the board.

Pullman has been consistently applied by the New York State Courts and also by this Court. See, e.g., The World of Residensea II, Ltd. v. Salvador Villasenor 2007 U.S. Dist. LEXIS 23179 (S.D.N.Y. 2007); 1050 Tenants Corp. v. Lapidus, 39 A.D.3D 379, 835 N.Y.S. 2d 68 (1st Dep't 2007); 1335 Owners Corp. v. Kennedy, 4 Misc, 3d 931; 782 N.Y.S. 2d 554 (N.Y. Cty. 2004); London Terrace Towers, Inc. v. Davis, 6 Misc.3d 600, 790 N.Y.S. 2d 813 (N.Y. Cty. 2004). In The World of Residensea II, Ltd. v. Salvador Villasenor this Court applied Pullman, and discussed the Due Process protections afforded under Pullman. Notably, the New York State Legislature has not amended RPAPL § 711 since the Pullman decision, evidencing that the 2003 Pullman decision is within its legislative intent. See Buchanan v. Pataki, 2003 U.S. Dist. LEXIS 16707, at 12-13 (S.D.N.Y. 2003).

**Cooperative Owners' and Traditional Tenants' Relationships with Their "Landlords" Are Distinct**

The Pullman Court correctly recognized that cooperative owners have a different relationship with the cooperative corporation "landlord" than a traditional tenant has with its landlord. Pullman, 790 N.E.2d at 1180, 760 N.Y.S.2d at 750. The Court relied heavily upon its prior decision in Levandusky where the Court also recognized the significant differences between those relationships. See Levandusky v. One Fifth Ave. Apt. Corp., 75 N.Y.2d 530, 553, 554 N.E.2d 1317 (1990). The New York Court of Appeals has consistently recognized that cooperative ownership is a unique form of ownership; not only in the business judgment rule cases, but also in cases in which the Court determined that cooperative ownership is *sui generis* and should be treated as ownership of personalty rather than realty and in cases in which the Court examined the propriety of "flip taxes" imposed by Cooperatives on its shareholders. Fe Bland v. Two Trees Management Co., 66 N.Y.2d 556, 489 N.E.2d 223 (1985) (resulting in legislative amendment of BCL 501(c)); Matter of State Tax Comm'n. v. State, 43 N.Y.2d 151, 154, 371 N.E.2d 523, 524, 400 N.Y.S.2d 805, 806 (1977).

In the New York Court of Appeals' own words "the very concept of cooperative living entails a voluntary, shared control over rules, maintenance and the composition of the community. . . a shareholder–tenant voluntarily agrees to submit to the authority of a cooperative board, and consequently the board 'may significantly restrict' the bundle of rights a property owner normally enjoys." Pullman, 100 N.Y.2d at 158, 790 N.E.2d at 1182, 760 N.Y.S.2d at 753 (*citing* Levandusky). A traditional tenant does not voluntarily submit to the authority of a board of directors which is responsible for the cooperative corporation.

"As courts and commentators have noted, the cooperative or condominium association is a quasi-government - - 'a little democratic sub society of necessity'...." Levandusky, 75 N.Y.2d

at 536, 553 N.E.2d at 1320, 554 N.Y.S.2d at 810.  The Court of Appeals recognized that the purpose for which a cooperative community and its governing structure were formed is "protection of the interest of the entire community of residents in an environment managed by the board for the common benefit." Id. at 357, 553 N.E.2d at 1321, 554 N.Y.S.2d at 811.

"The proprietary lessees or condominium owners consent to be governed, in certain respects, by the decisions of a board.  Like a municipal government, such governing boards are responsible for running the day-to-day affairs of the cooperative and to that end, often have broad powers in areas that range from financial decision making to promulgating regulations regarding pets and parking spaces." Id.

"[A]greement to submit to the decision making authority of a cooperative board is voluntary in a sense that submission to government authority is not; there is always the freedom not to purchase the apartment.  The stability offered by community control, through a board, has its own economic and social benefit, and purchase of a cooperative apartment represents a voluntary choice to cede certain of the privileges of a single ownership to a governing body, often made up of fellow tenants who volunteer their time, without compensation." Id. at 536, 533 N.E.2d at 3120-21, 554 N.Y.S.2d at 810-11.

Cooperative owners have the right to vote annually to elect their board and even the right to run for election themselves.  Actually, the defendant cooperative's board members must all be cooperative owners.  If the shareholders are dissatisfied with the board members they can vote to remove them.  See Colbert Aff., Exhibit B at Article 2, Section 4.  Traditional tenants do not have any of these rights vis-à-vis their landlords.  Traditional tenants generally have no control over their landlord.

Another important distinction is that "[a] contract for the sale of a cooperative apartment, in reality a sale of securities in a cooperative corporation, is governed by the Uniform

Commercial Code." Friedman v. Sommer, 63 N.Y.2d 788, 789-90, 471 N.E.2d 139, 140, 481

N.Y.S.2d 326, 327 (1984) (quoting Weiss v. Karch, 62 NY2d 849, 850). When cooperative

owners purchase a cooperative apartment, they are issued stock certificates for the apartment and

become owner tenants under a proprietary (i.e., owner's) lease that is appurtenant to the stock.

All shareholders in the cooperative corporation are governed by the same proprietary lease. See

Colbert Aff., Exhibit B at Article 5, Section 1;  Fe Bland v. Two Trees Management Co., 66

N.Y.2d 556, 563, 489 N.E.2d 223, 227, 498 N.Y.S.2d 336, 340 (1985); Barbour v. Knecht, 296

A.D.2d 218, 743 N.Y.S.2d 483 (1st Dep't 2002).  This is very different than a traditional tenant

who enters into a lease for the tenant itself and not a single lease for all of the residents of the

entire building.  It is essential that all of the cooperative owners be governed by a board of

directors who are charged with safeguarding and acting in the best interest of all of its

cooperative shareholders.  In a traditional landlord-tenant relationship, the landlord protects the

interest of the landlord and the tenant protects its own interests.  In a cooperative, the cooperative

owner may be self-serving, but the cooperative board of directors is obligated to legitimately

further the corporate purposes (which is one of the elements of the business judgment rule).

    The New York Court of Appeals decision in Matter of State Tax Commission, is relevant

here as it demonstrates that cooperative ownership - - which is sometimes viewed as a personal

property interest - - is different than a traditional tenant's interest which is typically interest in the

demised premises under the lease.  The Court of Appeals unanimously held that an interest in a

cooperative apartment should be treated as personal property where priorities of judgment

creditors were involved. Matter of State Tax Comm'n. v. State, 43 N.Y.2d 151, 154, 371 N.E.2d

523, 524, 400 N.Y.S.2d 805, 806 (1977).  "[S]hort of violation of public policy or positive law,

co-operative tenants, co-operative corporations, and third parties dealing with them do not now,

if they ever did, treat co-operative tenancies as chattels real". Id. at 159, 371 N.E.2d at 527, 400 N.Y.S.2d at 809.

The Court of Appeals deemed cooperative ownership interest to be "*sui generis*". Id. The ownership interest "reflects only an ownership of a proprietary lease, and therefore arguably an interest in a chattel real, conditional however upon his shareholder interest in the co-operative corporation, an interest always treated as personal property." Id. "The leasehold and the shareholding are inseparable." Id.

The Court recognized that a proprietary lease only superficially resembles the traditional rental apartment lease, explaining that:

> The growth of co-operative ownership of apartment buildings, throughout the Nation, but especially in New York City, has created legal problems not resolved by uncritical resort either to the rubrics governing real property or those governing personal property. . . .The co-operative corporation owns the land and the building. Shares in the corporation are sold to each apartment 'owner', who receives a stock certificate, not a deed to real property. The shares entitle the shareholder to a long-term apartment 'proprietary' lease. . . . One has, therefore, a mixed concept and terminology, superficially resembling the traditional rental apartment lease, except, for example, that the lessee pays monthly maintenance charges and is subject to assessments instead of rent. For some purposes it is a lease; for others it is a compact between co-operative corporation and co-operative tenant. In any case the rights of the tenant are initiated by the capital investment made in the shares of the co-operative corporation. . . .

Id. at 156, 371 N.E.2d at 526, 400 N.Y.S.2d at 807.

All of the cooperative's shareholders voluntarily agree that the cooperative corporation in which each is a partial owner, will be governed by a board of directors which has a fiduciary obligation to make decisions in the best interest of the cooperative as a whole. As the Levandusky Court stated, "the stability offered by community control, through a board has its own economic and social benefits, and purchase of a cooperative apartment represents a voluntary choice to cede certain of the privileges of single ownership to a governing body . . . . " Levandusky, at 536, 553 N.E.2d at 1320-21, 554 N.Y.S.2d at 810-11.

Under a cooperative corporation's by-laws, the shareholders vote for the board of directors that governs them. The by-laws also give the board of directors broad authority to govern the cooperative community. *See* Colbert Aff., Exhibit B at Article 2, Section 7. In the proprietary lease all of the shareholders agree together (because they are all voluntarily subject to the same lease) to certain rights and obligations. The terms of the proprietary leases differ with each cooperative.

The proprietary lease provision in question here gives the cooperative corporation the right to terminate a cooperative owner's lease because of objectionable conduct. Colbert Aff., Exhibit A, ¶ 31. First, there has to be notice to the owner that they are engaging in objectionable conduct and the shareholder must then again engage in objectionable conduct. Id. The vote of a majority of all the board members must be made in favor of termination for objectionable conduct.

Proprietary leases differ on the requirements for such termination and as such, cooperative shareholders in different cooperatives cannot be lumped together in the same class since they themselves are not even similarly situated. Some proprietary leases allow the majority of a cooperative's board of directors to vote to terminate for objectionable conduct. Other proprietary leases, like the one here, first require notice of objectionable conduct, a repeating of objectionable conduct after notice and then termination by a majority of the entire board of directors. Other proprietary leases, like the <u>Pullman</u> lease, take the decision making out of the board's hands and places it in the hands of 2/3 of cooperative shareholders which is the requisite vote for termination.

Another tremendous difference between cooperative owners' and traditional tenants' relationships with their "landlords" is that a traditional tenant typically cannot amend its lease without its landlord's consent. This is not the case for cooperative owners who, with or without

7

the cooperative corporation's board consent, can vote to amend the proprietary lease. If the cooperative owners do not like a provision in the proprietary lease (*e.g.,* the lease provision concerning termination for objectionable conduct), they can unilaterally amend the proprietary lease. *See* Brennan v. Breezy Point Cooperative, Inc., 63 N.Y.2d 1022, 473 N.E.2d 738, 484 N.Y.S.2d 510 (1984). Traditional tenants do not have that power. The proprietary lease at issue here provides for a 2/3 vote of shareholders for a lease amendment. Colbert Aff., Exhibit A at ¶ 6. Since the conversion of defendant 320 Owners Corp. to cooperative ownership in 1977, the proprietary lease provision on termination for objectionable conduct has remained the same. Id.

Unlike a cooperative owner, the traditional tenant does not enjoy the benefits of quasi-fee ownership. The traditional tenant does not have a financial ownership interest in the apartment building, does not have a right to vote to elect the body that governs the apartment building, does not have the right to run for election to the board governing the apartment corporation, does not have the right to vote to remove the board, does not have a say in the governing of the cooperative community, does not have the power to cause an amendment of the proprietary lease without its landlord's consent, etc. The traditional tenant has no say in its landlord's governing or decision making. It cannot be overemphasized that a cooperative owner is not just a tenant, but instead an owner who has a say in the governance of the cooperative corporation. A traditional tenant is merely a tenant with a leasehold interest during the term of the lease that has no say in the governance by its landlord. This is one of the crucial differences that the Pullman Court recognized in deciding that the business judgment rule satisfies the "competent evidence" standard in the unique cooperative setting.

In adopting the business judgment rule standard to cooperative corporation decision making, the Levandusky Court explained:

The more limited judicial review embodied in the business judgment rule is preferable. In the context of the decisions of a for-profit corporation, 'courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments * * * by definition the responsibility for business judgment must rest with the corporate directors; their individual capabilities and experience peculiarly qualified them for the discharge of that responsibility.' [citation omitted]. Even if decisions of a corporative board could not generally involve expertise beyond the usual ken of the judiciary, at the least board members will possess experience of the peculiar needs of their building and its residents not shared by the court.

Several related concerns persuade us that such a rule should apply here. As this case exemplifies, board decisions concerning what residents may or may not do with their living space may be highly charged and emotional. A cooperative or condominium is by nature a myriad of often competing views regarding personal living space, and decisions taken to benefit the collective interest may be unpalatable to one resident or another, creating the prospect that board decisions will be subjected to undo court involvement in judicial second-guessing. Allowing an owner who is simply dissatisfied with particular board action a second opportunity to reopen the matter completely before a court, which - - generally without knowing the property – may or may not agree with the reasonableness of the board's determination, threatens the stability of the common living arrangement.

Levandusky, at 539-40, 553 N.E.2d at 1322-23, 554 N.Y.S.2d at 812-13.

### The Competent Evidence Standard and *Pullman*

In the traditional landlord-tenant setting the court will determine whether competent evidence establishes that a tenant is objectionable. In Pullman, the Court of Appeals decided that in the cooperative setting, a cooperative corporation's decision to terminate a shareholder's tenancy will satisfy the competent evidence standard as long as the business judgment rule applies. If a cooperative owner makes a showing that, "the board acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose or (3) in bad faith," the courts will undertake a review of the evidence supporting the cooperative board's decision to terminate the tenancy to assure that the competent evidence standard of 711 is satisfied. Pullman, 100 N.Y.2d 147, 155 (N.Y. 2003); see 1335 Owners Corp. v. Kennedy, 4 Misc. 3d 931; 782 N.Y.S. 2d 554 (N.Y. Cty. 2004); London Terrace Towers, Inc. v. Davis, 6 Misc.3d 600, 790 N.Y.S. 2d 813

(N.Y. Cty. 2004). The business judgment rule standard in most cases arguably provides more protection and process to a cooperative tenant than is afforded to a traditional tenant under RPAPL § 711. A traditional landlord can act in a purely selfish manner, provided that the landlord can establish objectionable conduct by competent evidence. For the business judgment rule to apply, the cooperative board must have acted within its authority, in a way that legitimately furthers the corporate purpose and in good faith, before the competent evidence standard under RPAPL § 711 is satisfied.

## ARGUMENT

### POINT I

### EQUAL PROTECTION DOES NOT APPLY, OR IS SATISFIED

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." Jankowski-Burczyk v. Immigration and Naturalization Service, 291 F.3d 172 (2d Cir. 2002); *see* City of Cleburne, 473 U.S. 432 (1985); Plyler v. Doe, 457 U.S. 202, 216; (1982). If the alleged classes are not similarly situated, Equal Protection of the law does not apply. Able v. United States, 155 F.3d 628, 631 (2d Cir. 1998). "Of course, the government can treat persons differently if they are not 'similarly situated.'" Id.

As demonstrated, cooperative owners and traditional rental tenants are not similarly situated. Voluntary ownership in a cooperative implies an entirely different bundle of rights and duties than the traditional landlord-tenant rental situation, including governance and management by the cooperative board, which is comprised of tenant-shareholders. There are a myriad of other reasons, set forth above, that they are not similarly situated. For example, cooperative owners have the right to vote to elect as well as the right to vote to remove the board which they voluntarily agreed would govern them. All of the cooperative's owners are subject to the same proprietary lease and the cooperative owners can vote to change the lease if they desire. The New York Courts do not even

10

view cooperative ownership as an ownership of realty and see it rather as the ownership of personalty. A traditional tenant does not have any of those rights and simply has the right to occupy the demised premises under the lease for the term of the lease. The traditional landlord looks out for its interests as does the traditional tenant. That is not the case in a cooperative setting.

If this Court agrees, then Equal Protection is not required and that is the end of the analysis. However, if this Court does not agree, then the question is whether there is a rational reason for treating cooperative owners and traditional rental tenants differently insofar as how the "competent evidence" standard under RPAPL § 711 is satisfied.

A government action that does not interfere with a fundamental right protected by the Constitution nor uses a suspect classification scheme is subject to a rational basis standard of judicial review. FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Thus, a governmental action "must be upheld against an Equal Protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. In other words, "statutory discrimination will not be set aside as the denial of Equal Protection of the laws if any state of facts reasonably may be conceived to justify it." Metropolitan Casualty Insurance Co. v. Brownell, 294 U.S. 580, 584 (1935).

In fact, the rational basis pled must only be "plausible," and it is plaintiff who "bears the burden to negate every 'conceivable basis' that could support the challenged statute." Buchanan v. Pataki, 2003 U.S. Dist. LEXIS 16707, at 11 (S.D.N.Y. 2003); see FCC v. Beach Communications, Inc., 508 U.S. 307 at 315. There is a "strong presumption of validity" under rational basis review in Equal Protection analysis. Heller v. Doe, 509 U.S. 312, 319 (1993).

Further, it has been held that rational basis review is the appropriate standard for analyzing Equal Protection challenges to laws regulating tenants. Buchanan v. Pataki, 2003 U.S. Dist. LEXIS 16707 at 10; see Black v. State of New York, 13 F. Supp. 2d 538 (S.D.N.Y. 1998). "Housing is not

11

a fundamental right, and classifications affecting housing are subject only to the 'rational relationship' test. . . ." Sidberry v. Koch, 539 F. Supp. 413 (S.D.N.Y. 1982).

Moreover, a state statute "classifying tenants of real property differently from other tenants for purposes of possessory actions will offend the Equal Protection safeguard only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective or if the objective itself is beyond the state's power to achieve." Lindsey, 405 U.S. at 70 (citations omitted).

This Court has previously ruled on a matter involving alleged disparate treatment of tenants under a New York State statute. In Buchanan v. Pataki, this Court held that the differences that exist between New York City tenants and suburban tenants were a rational basis for different treatment under the statute. 2003 U.S. Dist LEXIS 16707 (S.D.N.Y. 2003). "In sum, these differences provide a rational basis for the Legislature's determination to treat tenants in the two systems differently with respect to eviction for owner use and occupancy." Id. at 12[1].

The rational basis standard is satisfied for the same reasons that cooperative owners are not similarly situated as traditional rental tenants. Plaintiffs have the burden "to negate every conceivable basis" that could support the challenged state action. Buchanan, *supra*. Plaintiffs have not, because they cannot, negate the reasoning of the unanimous New York Court of Appeals that the relationships between cooperative owners and their "landlords" which are run by a board of directors is much different than a traditional landlord-tenant relationship. The Pullman and Levandusky decisions are replete with reasons why cooperative owners and traditional tenants must be treated differently. Defendants have highlighted some of those reasons including the cooperative

---

[1] Plaintiffs' argument that a heightened standard may apply here is baseless. The few cases that they cite are factually distinct and inapplicable. *See* Kramer v. Union Free School District No. 15, 395 U.S. 621 (1969) (involving infringement upon citizens' right to vote in local school district elections); Shapiro v. Thompson, 394 U.S. 618 (1969) (concerning the denial of public benefits to state residents); Skinner v. Oklahoma, 316 U.S. 535; (1942) (involving Oklahoma's then Habitual Criminal Sterilization Act, clearly not analogous to the action at bar). As shown above, the rational basis standard applies here.

owner's voluntary submission to board governance and the need for the board to act for the cooperative community's best interests in the "quasi government", "little democratic society." Levandusky, *supra*. Other reasons include the fact that cooperative owners govern themselves. They are in essence their own landlords in that they vote for the governing board which acts for the cooperative corporation landlord. The cooperative owners here are the only persons who can be board members. They can vote to elect or remove board members and can vote to change the proprietary lease including the provision on termination for objectionable conduct. Traditional tenants do not have any of these rights. In view of these differences, the rational basis test is satisfied and there is no violation of Equal Protection. Plaintiffs have not satisfied their burden of negating every 'conceivable basis' for the New York Court of Appeal's decision that for cooperative corporations, the business judgment rule satisfies the competent evidence standard under RPAPL § 711.

## POINT II

### DUE PROCESS IS NOT REQUIRED HERE, OR IS SATISFIED

The relationship between a cooperative corporation and its shareholders is based upon a private agreement between them. The cooperative corporation's right to terminate a shareholder's lease for objectionable conduct is found in the proprietary lease. It is not "some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *See* Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922 (1982). Indeed, RPAPL § 711 does not even apply at all unless there is a preexisting lease provision authorizing termination for objectionable conduct. *See* RPAPL § 711(1). Because the cooperative corporation/owner's relationship is based upon a private agreement, there should be no Constitutional Due Process required. If Due Process is required, it is satisfied in any event.

The private relationship between a cooperative corporation and its shareholders is more akin to the private relationship between a UCC creditor that makes a loan to a cooperative shareholder. Their relationship is based upon a security agreement between them in which they agree that the creditor may sell the cooperative owner's shares in an apartment in the event of a default. The Courts have determined that there is no Fourteenth Amendment protection in those circumstances because the relationship between the parties is based upon a private agreement. *See* Morris v. Citibank, 1998 U.S. Dist. LEXIS 10056 (S.D.N.Y. 1998); Jefferds v. Ellis, 132 A.D.2d 321, 522 N.Y.S.2d 398 (4th Dep't 1987) ("peaceable self-help remedies by secured creditors do not involve state action but, rather, constitute private action not governed by the Fourteenth Amendment").

In Lugar, the United States Supreme Court examined a state's statutory prejudgment attachment procedures and applied a two-part approach in determining whether Constitutional Due Process is required. Lugar, 457 U.S. at 937. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. Unlike the circumstances in Lugar where a state statute provided the right to attach, the right here for a cooperative corporation to terminate a proprietary lease is not pursuant to a statute but rather pursuant to a private agreement between the parties. Because the first prong of the Lugar approach is not satisfied here, no Constitutional Due Process is required. Although plaintiffs argue that the second part of the Lugar approach is satisfied because some State Action by a sheriff or marshal is required to effectuate an eventual eviction of a cooperative shareholder, the Court does not reach the second part of the approach because the first part is not satisfied. This case is different than the Lugar case and other cases that plaintiffs cite because all of those cases

dealt with state statutes which created the rights that were being challenged as unconstitutional. *See* Edmonson v. Leesville Concrete Co., Inc., 500 U.S.614 (1991) (challenging New York Statute regarding preemptory challenges); Tulsa Professional Collection Services, Inc. v. JoAnne Pope, 485 U.S. 478 (1988) (challenging Oklahoma's nonclaim statute); Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978) (challenging New York UCC § 7-210);  Price v. U-Haul Co. of Louisiana, 745 So.2d 593 (Sup. Ct. LA1999) (challenging the "Self-Service Storage Facility Act").

Assuming that Constitutional Due Process is required, it is satisfied.  Due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and an opportunity for a hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652 (1950).

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 377 (1971); *see*  Armstrong v. Manzo, 380 U.S. 545, 551 (1965).  "Due process of law signifies a right to be heard in one's defence [sic]." Hovey v. Elliot, 167 U.S. 409 (1897).  In other words, "[a]n elementary and fundamental requirement of Due Process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Armstrong, 380 U.S. 545, 549; *see*  Milliken v. Meyer, 311 U.S. 457 (1940).

In the ejectment case that plaintiffs cited, the United States Supreme Court explained:

That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted....But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered.

Windsor v. McVeigh, 93 U.S. 274, 277 (1876).

Due Process does not require discovery and a full blown hearing on the merits.  Boddie,

401 U.S. 371, 378, 91 S. Ct. 780, 786 (1971).  All that is required is notice and a meaningful

opportunity to be heard. Id.

The Pullman Court addressed the issue of Due Process by stating:

> The cooperative unfailingly followed the procedures contained in the lease when
> acting to terminate defendant's tenancy.  In accordance with the bylaws, the Board
> called a special meeting, and notified all shareholders of its time, place and
> purpose.  *Defendant thus had notice and the opportunity to be heard.*  In
> accordance with the agreement, the cooperative acted on a supermajority vote
> after properly fashioning the issue and the question to be addressed by resolution.
> The resolution specified the basis for the action, setting forth a list of specific
> findings as to defendant's objectionable behavior.  By not appearing or presenting
> evidence personally or by counsel, defendant failed to challenge the findings and
> has not otherwise satisfied us that the Board has acted in any way ultra vires.  In
> all, defendant has failed to demonstrate that the cooperative acted outside the
> scope of its authority in terminating the tenancy.

Pullman, 100 N.Y.2d 147, 156, 790 N.E.2d 1174, 1181 (emphasis added).[2]

Due process was also addressed by Pullman's progeny.  "If a court is to defer to a board

or shareholders' vote, it is important that the shareholder-tenant who risks eviction be entitled to

attend the meeting at which that vote takes place.  That is where the shareholder-tenant will have

a chance to plead and defend." 13315 Owners Corp. v. Kennedy, 4 Misc.3d 931, 782 N.Y.S.2d

554 (N.Y. Cty. 2004).  The Kennedy court applied Pullman, but declined to apply the business

judgment rule under phase one of the analysis because the Cooperative's Board of Directors had

been improperly elected, failed to follow all of the procedures under the governing documents,

and "denied Due Process: it gave neither valid notice nor an opportunity to be heard." Kennedy,

4 Misc.3d 931, 951, 782 N.Y.S.2d 554, 571.  Thus, the Kennedy court decided that, under phase

---

[2] Notably, the published Pullman decision, reveals that the parties briefed the Due Process issue
which must have been considered by the Court of Appeals.

two of Pullman analysis, the court would review the evidence under a competent evidence analysis to determine whether the shareholder's actions were objectionable. Id.

In another decision, it is discussed that notice to a shareholder before a special meeting setting forth the alleged objectionable conduct that might form the basis to terminate a proprietary lease satisfies Due Process requirements. "Having that notice assures Due Process and an opportunity to defend. A comparison is also necessary to ensure that the board voted on the same repeated misconduct about which the shareholders had received prior written notice." London Terrace Towers, Inc. v. Davis, 6 Misc.3d 600, 614, 790 N.Y.S.2d 813, 824 (N.Y. Cty. 2004).

Thus, under Pullman and its progeny, the New York State courts have considered Due Process concerns and ensured that a cooperative owner is provided notice and an opportunity to be heard before the business judgment rule applies and satisfies the competent evidence standard of RPAPL § 711.

Notably, the United States District Court for the Southern District of New York has applied Pullman and discussed the Due Process protections under Pullman. The World of Residensea II, Ltd. v. Salvador Villasenor, 2007 U.S. Dist. LEXIS 23179, (S.D.N.Y. 2007). The Court found persuasive that: a properly elected board had acted within its authority under its governing documents; the board had provided defendant with a forum to dispute the alleged objectionable conduct and had given defendant an opportunity to be heard; and that defendant had in fact appeared and defended himself against the board's allegations. Id. The Court found a reasonable exercise of the board's discretion and held that "the decision is entitled to deference under Pullman." Id.

Thus, with respect to Due Process, at least one federal court upheld the procedures employed under Pullman, including a shareholder or board vote preceded by notice to the

shareholder, called and conducted in accordance with the governing documents, with notice and opportunity to be heard.

In the action at bar, plaintiffs were provided with Constitutional Due Process. The Cooperative followed the procedures set forth in its By-Laws and Proprietary Lease, in making a determination to terminate plaintiffs' proprietary lease for objectionable conduct. The Cooperative first provided Plaintiffs with written notice of the objectionable conduct by letter dated September 5, 2006.   The objectionable conduct repeated after the written notice.

In accordance with the provisions of the By-Laws and the Proprietary Lease, a Special Meeting of the Board of Directors was noticed on June 5, 2007, with the meeting to be held on June 28, 2007.  Plaintiffs and their attorney received notice of the meeting.  The Cooperative adjourned the meeting at the request of plaintiffs, by notice dated July 5, 2007, to the adjourned date of July 10, 2007.

Thus, Plaintiffs were given advance notice of the Meeting of the Cooperative's Board of Directors, given the opportunity to attend the Meeting and be heard, and to appear with counsel at the Meeting.  Plaintiffs, their son and their attorney appeared at the Meeting and were heard prior to the Board's deliberation and determination to terminate.

Any Constitutional process that was due to plaintiff cooperative shareholders, was given to them.  They were provided with notice of objectionable conduct, notice of repeated objectionable conduct and of the Special Board Meeting as well as the opportunity to appear and be heard by the board before the board made a decision.  The board heard from each of the plaintiffs, from their son and from their attorney before deliberating and then unanimously voting in favor of termination.

## CONCLUSION

In view of the above, there is either no Constitutional Equal Protection or Due Process owed to plaintiffs or those protections were satisfied.  As such, defendants' cross-motion to dismiss must be granted and Plaintiffs' preliminary injunction motion denied.

Dated:  New York, New York
         November 13, 2007

KAGAN LUBIC LEPPER
LEWIS GOLD & COLBERT, LLP

By: _____
       Joseph G. Colbert (JC-6240)
Attorneys for Defendants
200 Madison Avenue
24th Floor
New York, New York 10016
(212) 252-0300

On the brief:
Denise M. Campbell
Christopher R. Travis