# EXHIBIT A

Document Number 3

Apt. No.:

Shares:

------------------------------------------------------------

320 OWNERS CORP.
A New York Corporation having an office
at 320 West End Avenue, New York
City, New York

Lessor,

TO

Lessee

PROPRIETARY LEASE

320 WEST END AVENUE

40

# TABLE OF CONTENTS

CAPTION | PAGE
--- | ---
Demised Premises; Term | 1
Rent (Maintenance) How Fixed | 1
    Accompanying Shares to Be Specified in Proprietary Leases | 2
    Cash Requirements Defined | 2
    Authority Limited to Board of Directors | 3
    Issuance of Additional Shares | 3
    Paid-in Surplus | 3
    Failure to Fix Cash Requirements | 3
Lessor's Repairs | 3
Services By Lessor | 4
Damage to Apartment or Building | 4
    Rent Abatement | 5
    Expiration of Lease Due to Damage | 5
    Waiver of Subrogation | 5
Inspection of Books of Account Annual Report | 6
Changes in Terms and Conditions of Proprietary Leases | 6
Penthouse, Terraces and Balconies | 7
Assignment of Lessor's Rights Against Occupant | 7
Cancellation of Prior Agreements | 7
Quiet Enjoyment | 8
Indemnity | 8
Payment of Rent | 8
House Rules | 9
Use of Premises | 9

(i)

| CAPTION | PAGE |
|---|---|
| Subletting | 9 |
| Assignment | 10 |
| Consents: On Death of Lessee | 11 |
| Consents Generally: Stockholders' and Directors' Obligations to Consent | 11 |
| Release of Lessee Upon Assignment | 11 |
| Further Assignment or Subletting | 11 |
| Statement by Lessor | 12 |
| Pledge of Shares and Lease | 12 |
| Secured Party | 12 |
| Repairs By The Lessee | 16 |
| Odors and Noises | 17 |
| Equipment and Appliances | 17 |
| Rules and Regulations and Requirements of Mortgage | 17 |
| Lessor's Right To Remedy Lessee's Defaults | 18 |
| Increase in Rate of Fire Insurance | 18 |
| Alterations | 19 |
| Removal of Fixtures | 19 |
| Surrender on Expiration of Term | 20 |
| Lease Subordinate To Mortgages and Ground Leases | 21 |
| Mechanic's Lien | 22 |
| Cooperation | 22 |
| Right of Entry; Key | 22 |
| Waivers | 23 |

(ii)

41

| CAPTION | PAGE |
|---|---|
| Notices | 23 |
| Reimbursement of Lessor's Expenses | 24 |
| Lessor's Immunities | 24 |
| Storage Space and Laundry | 24 |
| Automobiles and Other Property | 25 |
| Window Cleaning | 25 |
| Termination of Lease By Lessor | 25 |
| Lessee Ceasing to Own Accompanying Shares | 26 |
| Lessee Becoming a Bankrupt | 26 |
| Assignment, Subletting or Unauthorized Occupancy | 27 |
| Default in Rent | 27 |
| Default in Other Covenants | 27 |
| Lessee's Objectionable Conduct | 27 |
| Termination of All Proprietary Leases | 28 |
| Destruction of Building | 28 |
| Condemnation | 28 |
| Lessee's Default Under Security Agreement | 28 |
| Lessor's Rights After Lessee's Default | 29 |
| Collection of Rent from Subtenants | 30 |
| Sale of Shares | 30 |
| Waiver of Right of Redemption | 31 |
| Surrender of Possession | 31 |
| Lessee's Option To Cancel | 31 |
| Deposits Required | 32 |
| Removal of Fixtures; Possession | 32 |

(iii)

CAPTION                                                                    PAGE

    Permission to Show and Occupy Premises ........................ 33

    Effective Date of Cancellation .................................... 33

    Rights on Lessee Default .......................................... 33

Extension of Option to Cancel ........................................ 33

    Right of Lessees to Cancel ........................................ 34

Continuance of Cooperative Management of Building After All
    Leases Terminated .................................................. 34

Unsold Shares ........................................................ 35

    Subletting Apartment and Sale of Shares .......................... 35

    Change in Form of Lease .......................................... 35

Foreclosure—Receiver of Rents ........................................ 36

To Whom Covenants Apply .............................................. 36

Waiver of Trial By Jury .............................................. 36

Lessor's Additional Remedies ......................................... 37

Lessee More Than One Person .......................................... 37

Effect of Partial Invalidity ......................................... 37

Notice To Lessor of Default .......................................... 37

Unity of Shares and Lease ............................................ 38

Charges For Gas and Electricity ...................................... 38

No Discrimination .................................................... 38

Marginal Headings .................................................... 38

Changes To Be In Writing ............................................. 38

House Rules .......................................................... 41

(iv)

43

1

## PROPRIETARY LEASE

Proprietary lease, made as of                    19  ,
by and between 320 Owners Corp., a New York Corporation
having an office at 320 West End Avenue, New York, N. Y.
hereinafter called the Lessor, and
hereinafter called the Lessee.

Whereas, the Lessor is the owner of the land
and the building erected thereon in New YOrk, State
of New York known as and by the street number 320 West
End Avenue, hereinafter called "the building"; and

Whereas, the Lessee is the owner of  shares
of the Lessor, to which this lease is appurtenant
and which have been allocated to Apartment  in
the building;

DEMISED PREMISES; TERM

NOW, THEREFORE, in consideration of the premises,
the Lessor hereby leases to the Lessee, and the
Lessee hires from the Lessor subject to the terms
and conditions hereof, Apartment    in the building
(hereinafter referred to as the apartment) for a
term from                    19  , until
September 30, 2075 (unless sooner terminated as
hereinafter provided).  As used herein "the apartment"
means the rooms in the building as partitioned on the
date of the execution of this lease designated by the
above-stated apartment number, together with their
appurtenances and fixtures and any closets, terraces,
balconies, roof, or portion thereof outside of said
partitioned rooms, which are allocated exclusively
to the occupant of the apartment.

RENT (MAINTENANCE)  HOW FIXED

1.  (a)  The rent (sometimes called maintenance)
payable by the Lessee for each year, or portion
of a year, during the term shall equal the proportion
of the Lessor's cash requirements for such year, or
portion of a year, which the number of shares of Lessor allocated to
the apartment bears to the total number of shares of the Lessor issued

44

2

and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments in advance on the first day of each month, unless the Board of Directors of the Lessor (hereinafter called Directors) at the time of its determination of the cash requirements shall otherwise direct. The Lessee shall also pay such additional rent as may be provided for herein when due.

### Accompanying Shares to Be Specified in Proprietary Leases

(b) In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there will be specified, the number of shares of the Lessor issued to a lessee simultaneously therewith, which number, in relation to the total number of shares of the Lessor issued and outstanding, shall constitute the basis for fixing, as hereinbefore provided, the proportionate share of the Lessor's cash requirements which shall be payable as rent by the Lessee.

### Cash Requirements Defined

(c) "Cash requirements" whenever used herein shall mean the estimated amount in cash which the Directors shall from time to time in its judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as it may deem proper; and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees), and (ii) cash on hand which the Directors in its discretion may choose to apply. The Directors may from time to time modify its prior determination and increase or diminish the amount previously determined as cash requirements of the corporation for a year or portion thereof. No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all lessees.

45

### Authority Limited to Board of Directors

(d) Whenever in this paragraph or any other paragraph of this lease, a power or privilege is given to the Directors, the same may be exercised only by the Directors, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

### Issuance of Additional Shares

(e) If the Lessor shall hereafter issue shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate as the other proprietary lessees from and after the date of issuance. If any such shares be issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The cash requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

### Paid-in Surplus

(f) The Directors may from time to time as may be proper determine how much of the maintenance and other receipts, when received, shall be credited on the corporate accounts to "Paid-in-Surplus" (but not more than such amount as represents payments on account of principal of mortgages on the property and other capital expenditures).

### Failure to Fix Cash Requirements

(g) The failure of the Directors to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements shall be made.

### LESSOR'S REPAIRS

2. The Lessor shall at its expense keep in good repair all of the building including all of the apartments, the sidewalks and courts

surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.

## SERVICES BY LESSOR

3. The Lessor shall maintain and manage the building as a first class apartment building, and shall keep the elevators and the public halls, cellars and stairways clean and properly lighted and heated, and shall provide the number of attendants requisite, in the judgment of the Directors, for the proper care and service of the building, and shall provide the apartment with a proper and sufficient supply of hot and cold water and of heat, and if there be central air conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Directors. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Directors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the building, and also what existing services shall be increased, reduced, changed, modified or terminated.

## DAMAGE TO APARTMENT OR BUILDING

4. (a) If the apartment or the means of access thereto or the building shall be damaged by fire or other cause covered by multiperil policies commonly carried by cooperative corporations in New York City (any other damage to be repaired by Lessor or Lessee pursuant to Paragraphs 2 and 18, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch after receipt of notice of said damage, repair or replace or cause to be repaired or replaced, with materials of a kind and quality then customary in buildings of the type of the building, the building, the apartment, and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the apartment. Anything in this Paragraph or Paragraph 2 to the contrary notwithstanding, Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any of his predecessors in title nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in the apartment or to refinish floors located therein.

5

*Rent Abatement*

(b) In case the damage resulting from fire or other cause shall be so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the apartment.

*Expiration of Lease Due to Damage*

(c) If the Directors shall determine that (i) the building is totally destroyed by fire or other cause, or (ii) the building is so damaged that it cannot be repaired within a reasonable time after the loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two thirds of the issued shares at a shareholders' meeting duly called for that purpose held within 120 days after the determination by the Directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this Lease and all other proprietary leases and all right, title and interest of the parties thereunder and the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage. The Lessee hereby waives any and all rights under Section 227 of the Real Property Law and in no event shall the Lessee have any option or right to terminate this Lease, except as provided herein.

*Waiver of Subrogation*

(d) Lessor agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against the Lessee; and, to the extent that any loss or damage is covered by the Lessor by any insurance policies which contain such waiver of subrogation, the Lessor releases the Lessee from any liability

6

with respect to such loss or damage. In the event that Lessee suffers loss or damage for which Lessor would be liable, and Lessee carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against the Landlord, then in such event Lessee releases Lessor from any liability with respect to such loss or damage.

### INSPECTION OF BOOKS OF ACCOUNT ANNUAL REPORT

5. The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and a statement of income and expenses, certified by an independent certified public accountant.

### CHANGES IN TERMS AND CONDITIONS OF PROPRIETY LEASES

6. Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least two-thirds of the Lessor's shares then issued and executed by the Lessor and lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of lessees owning at least 75% of the Lessor's shares then issued, and such changes shall be binding on all lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by any lessee may not be increased nor may his right to cancel the lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Notwithstanding the foregoing, in no event shall any change in the form of proprietary lease and any of the provisions thereof be made which shall adversely affect certain rights granted to (i) purchasers of Unsold Shares (pursuant to Paragraph 38 hereof) or (ii) the Secured Party (its successors or assigns) as set forth in Paragraph 17(b) below, unless all such purchasers of Unsold Shares and the Secured Party affected thereby shall have unanimously agreed to each such change.

49

7

### Penthouse, Terraces and Balconies

7. If the apartment includes a terrace, balcony, or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Directors. The Lessor shall have the right to erect equipment on the roof, including radio and television aerials and antennas, for its use and the use of the lessees in the building and shall have the right of access thereto for such installations and for the repair thereof. The Lessee shall keep the terrace, balcony, or portion of the roof appurtenant to his apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies, or roof of the building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or the roof of the building, nor shall the walls thereof be painted by the Lessee without the prior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the building.

### Assignment of Lessor's Rights Against Occupant

8. If at the date of the commencement of this lease, any third party shall be in possession or have the right to possession of the apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee by the execution hereof assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party.

### Cancellation of Prior Agreements

9. If at the date of the commencement of this lease, the Lessee has the right to possession of the apartment under any agreement

50

8

or statutory tenancy, this lease shall supersede such agreement or statutory tenancy which shall be of no further effect after the date of commencement of this lease, except for claims theretofore arising thereunder.

## Quiet Enjoyment

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and building, as provided in Paragraph 22 below.

## Indemnity

11. The Lessee agrees to save the Lessor harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission of the Lessee or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as in this lease provided. This paragraph shall not apply to any loss or damage when Lessor is covered by insurance which provides for waiver of subrogation against the Lessee.

## Payment of Rent

12. The Lessee will pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any set off or claim which the Lessee may have against the Lessor, and if the Lessee shall fail to pay any installment of rent promptly, the Lessee shall pay interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder.

9

## HOUSE RULES

13. The Lessor has adopted House Rules which are appended hereto, and the Directors may alter, amend or repeal such House Rules and adopt new House Rules. This lease shall be in all respects subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee. Breach of a House Rule shall be a default under this lease. The Lessor shall not be responsible to the Lessee for the non-observance or violation of House Rules by any other lessee or person.

## USE OF PREMISES

14. The Lessee shall not, without the written consent of the Lessor on such conditions as Lessor may prescribe, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than (i) for any home occupation use permitted under the applicable zoning law, building code or other rules and regulations of governmental author- ities having jurisdiction and (ii) as a private dwelling for the Lessee and Lessee's spouse, their children, grandchildren, parents, grand- parents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the apartment without the written consent of the Lessor.  In addition to the foregoing, the apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period is approved in writing by the Lessor, but no guests may occupy the apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor.

## SUBLETTING

15. Except as provided in Paragraph 17(b) and 38 of this lease, the Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Direc- tors, or given in writing by a majority of the Directors or, if the Directors shall have failed or refused to give such consent, then by lessees owning at least 65% of the then issued shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by writ- ten consent or by affirmative vote taken at a meeting called for such purpose. Any consent to subletting may be subject to such conditions

as the Directors or lessees, as the case may be, may impose.  There shall be no limitation on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to a subletting, except that as to the holders of unsold shares, such consent shall not be unreasonably withheld or delayed.  No consent to a subletting shall operate to release the Lessee from any obligation hereunder.

ASSIGNMENT

16. (a)  The Less shall not assign this lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment or transfer shall take effect as against the Lessor for any purpose, until

(i)  An instrument of assignment in form approved by Lessor executed and acknowledged by the assignor shall be delivered to the Lessor; and

(ii)  An agreement executed and acknowledged by the assignee in form approved by Lessor assuming and agreeing to be bound by all the covenants and conditions of this lease to be performed or coplied with by the Lessee on and after the effective date of said assignment shall have been delivered to the Lessor, or, at the request of the Lessor, the assignee shall have surrendered the assigned lease and entered into a new lease in the same form for the remainder of the term, in which case the Lessee's lease shall be deemed cancelled as of the effective date of said assignment; and

(iii)  All shares of the Lessor to which this lease is appurtenant shall have been transferred to the assignee, with proper transfer taxes paid and stamps affixed; and

(iv)  All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares (subject to Paragraphs 17(b) and 38 hereof); and

(v)  A search or certification from a title or abstract company as the Directors may require shall be delivered to Lessor; and

- 53 -

Simultaneously with the assignment of any shares and the proprietary lease appurtenant thereto, the assignor shall pay to the Corporation, in addition to the assignment fees provided for above, an amount equal to 2% of the amount by which the price at which such shares are sold, after subtracting therefrom brokerage commissions, if any, exceeds the price at which such shares were purchased by the assignor.

No assignment or transfer as provided for herein may take effect unless an instrument, in form satisfactory to the Board of Directors, and signed by both parties to the transaction, is delivered setting forth the relevant monetary terms of the transaction; together with a sworn statement of the profit signed by the tenant/shareholder and copies of all relevant documents pertaining to the transaction. The Board of Directors shall have the final authority to determine the amount of the transfer fee due. Such transfer fee shall be paid to the Corporation upon the closing of the transfer of the shares or upon issuance of the shares and the execution of the proprietary lease by the Corporation.

This fee shall be effective as of March 10, 1983 and shall not apply to any contracts of sale entered into prior to that date.

(vi) Except in the case of an assignment, transfer or bequest of the shares and this lease to the Lessee's spouse or adult siblings or parents, and except as otherwise provided in Paragraphs 17(b) and 38 of this lease, consent to such assignment shall have been authorized by resolution of the Directors, or given in writing by a majority of the Directors; or, if the Directors shall have failed or refused to give such consent within 30 days after submission of references to them or Lessor's agent, then by lessees owning of record at least 65% of the then issued shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose in the manner as provided in the by-laws.

## Consents: On Death of Lessee

(b) If the Lessee shall die, consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse, adult siblings or parents as to whom no consent is required).

## Consents Generally: Stockholders' and Directors' Obligations to Consent

(c) There shall be no limitation, except as above specifically provided, on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

## Release of Lessee Upon Assignment

(d) If the lease shall be assigned in compliance herewith, the Lessee-assignor shall have no further liability on any of the covenants of this lease to be thereafter performed.

## Further Assignment or Subletting

(e) Regardless of any prior consent theretofore given, neither the Lessee nor his executor, nor administrator, nor any trustee or receiver of the property of the Lessee, nor anyone to whom the interests of the Lessee shall pass by law, shall be entitled further to assign this lease, or to sublet the apartment, or any part thereof, except upon compliance with the requirements of this lease.

*Statement by Lessor*

(f) If this lease is then in force and effect, Lessor will, upon request of Lessee, deliver to the assignee a written statement that this lease remains on the date thereof in force and effect; but no such statement shall be deemed an admission that there is no default under the lease.

### PLEDGE OF SHARES AND LEASE

17. (a) A pledge of this lease and the shares to which it is appurtenant shall not be a violation of this lease; but, except as otherwise provided elsewhere herein, neither the pledgee nor any transferee of the pledged security shall be entitled to have the shares transferred of record on the books of the Lessor, nor to vote such shares, nor to occupy or permit the occupancy by others of the apartment, nor to sell such shares or this lease, without first obtaining the consent of the Lessor in accordance with and after complying with all of the provisions of Paragraphs 14, 15 or 16, as the case may be. The acceptance by Lessor of payments by the pledgee or any transferee of the pledged security on account of rent or additional rent shall not constitute a waiver of the aforesaid provisions.

*Secured Party*

(b) Notwithstanding the provisions of subparagraph (a) of this Paragraph 17 or any other provision of this lease to the contrary, the following provisions of this Paragraph shall govern and be binding.

(i) The Lessor agrees that it shall give to any holder of a security interest in the shares of the Lessor specified in the recitals of this lease or mortgagee of this lease who so requests (any such holder being hereinafter referred to as a "Secured Party"), a copy of any notice of default which the Lessor gives to the Lessee pursuant to the terms of this lease, and if the Lessee shall fail to cure the default specified in such notice within the time and in the manner provided for in this lease, then the Secured Party shall have an additional period of time, equal to the time originally given to the Lessee, to cure said default for the account of the Lessee or to cause same to be cured, and the Lessor will not act upon said default unless and until the time in which the Secured Party may cure said default or cause same to be cured as aforesaid, shall have elapsed, and the default shall not have been cured.

13

(ii) If this lease is terminated by the Lessor as provided in Paragraphs 31 or 35 of this lease, or by agreement with the Lessee, (1) the Lessor promptly shall give notice of such termination to the Secured Party and (2) upon request of the Secured Party made within thirty (30) days of the giving of such notice the Lessor (i) shall commence and prosecute a summary dispossess proceeding to obtain possession of the apartment, and (ii) shall, within sixty (60) days of its receipt of the aforesaid request by the Secured Party, reissue the aforementioned shares to, and (with respect to any termination other than under Paragraph 36 below) shall enter into a new proprietary lease for the apartment with, any individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, all without the consent of the Directors or the shareholders to which reference is made in Paragraphs 16(a)(vi) and 32(c) but with the consent only of the Lessor's then managing agent which shall not be unreasonably withheld or delayed, provided, however, that the Lessor shall have received payment, on behalf of the Lessee, of all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of reissuance of the aforementioned shares of the Lessor including, without limitation, sums owed under Paragraphs 32 (a) and (c) of this lease; the individual designated by the Secured Party (if and as long as such individual (by himself or a member of his family) does not actually occupy the apartment) shall have all of the rights provided for in Paragraphs 15, 16, 21 and 38 of this lease as if he were a holder of Unsold Shares; and, accordingly, no surplus shall be payable by the Lessor to the Lessee as otherwise provided in Paragraph 32(e).

(iii) If the purchase by the Lessee of the shares allocated to the apartment was financed by a loan made by a bank, savings bank or savings and loan association and a default or an event of default shall have occurred under the terms of the security agreement-leasehold mortgage or either of them entered into between the Lessee and the Secured Party, and if (1) notice of said default or event of default shall have been given to the Lessor, (2) an individual designated by the Secured Party, or the individual nominee of the individual so designated

14

by the Secured Party, shall be entitled to become the owner of the shares and the lessee under this lease pursuant to the terms of said security agreement-leasehold mortgage, or either of them, (3) not less than five days' written notice of an intended transfer of the shares and this lease shall have been given to the Lessor and the Lessee, (4) there has been paid, on behalf of the Lessee, all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of transfer of the aforementioned shares as hereinafter provided, and (5) the Lessor shall be furnished with such affidavits, certificates, and opinions of counsel, in form and substance reasonably satisfactory to the Lessor, indicating that the foregoing conditions (1) through (4) have been met, then (a) a transfer of the shares and the proprietary lease shall be made to such individual, upon request, and without the consent of the Directors or the shareholders to which reference is made in Paragraph 16(a)(vi) but with the consent only of the Lessor's then managing agent which shall not be unreasonably withheld or delayed, and (b) the individual to whom such transfer is made (if and as long as such individual (by himself or a member of his family) does not actually occupy the apartment) shall have all of the rights provided for in Paragraphs 15, 16, 21 and 38 of this lease as if he were a holder of Unsold Shares.

(iv) Without the prior written consent of any Secured Party who has requested a copy of any notice of default as hereinbefore provided in subparagraph (a) of this Paragraph 39, (a) the Lessor and the Lessee will not enter into any agreement modifying or cancelling this lease, (b) no change in the forms, terms or conditions of this lease, as permitted by Paragraph 6, shall eliminate or modify any rights, privileges or obligations of a Secured Party as set forth in this Paragraph 17, (c) the Lessor will not terminate or accept a surrender of this lease, except as provided in Paragraphs 31 or 35 of this lease and in subparagraph (b)(i) of this Paragraph 17, (d) the Lessee will not assign this lease or sublet the apartment, (e) any modification, cancellation, surrender, termination or assignment of this lease or any sublease of the apartment not made in accordance with the provisions hereof shall be void and of no

57

effect, (f) the Lessor will not consent to any further mortgage on this lease or security interest created in the shares, (g) the Lessee will not make any further mortgage or create any further security interest in the shares or this lease, and (h) any such further mortgage or security interest shall be void and of no effect.

(v) Any designee of a Secured Party to whom a transfer of a lease shall have been made pursuant to the terms of this subparagraph (b) hereof may cancel this lease under the terms of Paragraph 35 hereof; except that such designee (a) may cancel this lease at any time after the designee acquires this lease and the shares appurtenant hereto due to foreclosure of the security agreement-leasehold mortgage; (b) need give only thirty (30) days' notice of its intention to cancel; and (c) may give such notice at any time during the calendar year.

(vi) A Secured Party claiming or exercising any of the rights and privileges granted it pursuant to the provisions of this subparagraph (b) shall be deemed to have agreed to indemnify Lessor for all loss, liability or expense (including reasonable attorneys' fees) arising out of claims by Lessee, or his successors or assigns, against Lessor or the Secured Party, or their respective successors or assigns, for acts or omissions to act on the part of either Lessor or Secured Party, or their respective successors or assigns, pursuant to this subparagraph (b). Lessor will give the Secured Party written notice with reasonable promptness of any such claim against Lessor and the Secured Party may contest such claim in the name and on behalf of Lessor with counsel selected by the Secured Party at the Secured Party's sole expense. Lessor shall execute such papers and do such things as are reasonably necessary to implement the provisions of this subpart (vi).

(vii) Upon Lessee's final payment under the loan given by the Secured Party or upon prepayment of said loan, Secured Party will give Lessor notice of such final payment or prepayment (as the case may be).

(viii) Upon request of the purchaser of Unsold Shares (referred to in Paragraph 38 below), Lessor shall enter into

an agreement (commonly known as a "Recognition Agreement") with a Secured Party pursuant to which Lessor will acknowledge and agree that the foregoing provisions of this subparagraph (b) shall enure to the benefit of, and apply to, the Secured Party.  The Recognition Agreement may contain such additional or different provisions as the Secured Party may request and Lessor shall execute and deliver same to Lender provided only that such additional or different provisions are approved by counsel to Lessor (which approval may not be unreasonably withheld or delayed and shall be given or deemed given if same are of substantially similar tenor to the provisions of this subparagraph (b)).  The provisions of this subpart (viii) shall not apply to a lessee who is not a purchaser of Unsold Shares.

(ix)  Subject to the provisions of subpart (viii) above, a Recognition Agreement between a Lender and Lessor may contain such additional or different provisions as the Lessor and said Lender may agree to.

Repairs By The Lessee

18. (a)  The Lessee shall take possession of the apartment and its appurtenances and fixtures "as is" as of the commencement of the term hereof. Subject to the provisions of Paragraph 4 above, the Lessee shall keep the interior of the apartment (including interior walls, floors and ceilings, but excluding windows, window panes, window frames, sashes, sills, entrance and terrace doors, frames and saddles) in good repair, shall do all of the painting and decorating required for his apartment, including the interior of window frames, sashes and sills, and shall be solely responsible for the maintenance, repair, and replacemnt of plumbing, gas and heating fixtures and equipment and such refrigerators, dishwashers, removable and through-the-wall air conditioners, washing machines, ranges and other appliances as may be in the apartment.
Plumbing, gas and heating fixtures as used herein

shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceilings or floors or air conditioning or heating equipment which is part of the standard building equipment. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances, and equipment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box at the riser into and through the Lessee's apartment. Any ventilator or air conditioning device which shall be visible from the outside of the building shall at all times be painted by the Lessee in a standard color which the Lessor may select for the building.

## Odors and Noises

(b) The Lessee shall not permit unreasonable cooking or other odors to escape into the building. The Lessee shall not permit or suffer any unreasonable noises or anything which will interfere with the rights of other lessees or unreasonably annoy them or obstruct the public halls or stairways.

## Equipment and Appliances

(c) If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances shall result in damage to the building or poor quality or interruption of service to other portions of the building, or overloading of, or damage to facilities maintained by the Lessor for the supplying of water, gas, electricity or air conditioning to the building, or if any such appliances visible from the outside of the building shall become rusty or discolored, the Lessee shall promptly, on notice from the Lessor, remedy the condition and, pending such remedy, shall cease using any appliance or equipment which may be creating the objectionable condition.

## Rules and Regulations and Requirements of Mortgage

(d) The Lessee will comply with all the requirements of the Board of Fire Underwriters, insurance authorities and all governmental

18

authorities and with all laws, ordinances, rules and regulations with respect to the occupancy or use of the apartment. If any mortgage affecting the land or the building shall contain any provisions pertaining to the right of the Lessee to make changes or alterations in the apartment, or to remove any of the fixtures, appliances, equipment or installations, the Lessee herein shall comply with the requirements of such mortgage or mortgages relating thereto. Upon the Lessee's written request, Lessor will furnish Lessee with copies of applicable provisions of each and every such mortgage.

### LESSOR'S RIGHT TO REMEDY LESSEE'S DEFAULTS

19.  If the Lessee shall fail for 30 days after notice to make repairs to any part of the apartment, its fixtures or equipment as herein required, or shall fail to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the apartment shall request the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability on the Lessor; provided that, if the condition requires prompt action, notice of less than 30 days may be given or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. If Lessee shall fail to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from Lessor (not less than 5 days), then Lessor may, but shall not be obligated, to comply therewith, and for such purpose may enter upon the apartment of Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it has contracted hereunder, such expenses to be payable by the Lessee on demand as additional rent.

### INCREASE IN RATE OF FIRE INSURANCE

20.  The Lessee shall not permit or suffer anything to be done or kept in the apartment which will increase the rate of fire insurance

61

on the building or the contents thereof.  If by
reason of the occupancy or use of the apartment by
the Lessee, the rate of fire insurance on the
building or an apartment or the contents of either
shall be increased, the Lessee shall (if such occupancy
or use continues for more than 30 days after written
notice from the Lessor specifying the objectionable
occupancy or use) become personally liable for the ad-
ditional insurance premiums incurred by Lessor or any
lessee or lessees of apartments in the building on all
policies so affected, and the Lessor shall have the
right to collect the same for its benefit or the
benefit of any such lessees as additional rent for
the partment due on the first day of the calendar
month following written demand therefor by the
Lessor.

ALTERATIONS

     21. (a)  The Lessee shall not, without first
obtaining the written consent of the Lessor, which
consent shall not be unreasonably withheld or
delayed, make in the apartment or building, or
on any roof, penthouse, terrace or balcony appurtenant
thereto, any alteration, enclosure or addition
or any alteration of or addition to the water,
gas, or steam risers or pipes, heating or air conditioning
system or units, electrical conduits, wiring or
outlets, plumbing fixtures, inter-communication
or alarm system, or any other installation or
facility in the apartment or building.  The performance
by Lessee of any work in the apartment shall be
in accordance with any applicable rules and regulations
of the Lessor and governmental agencies having
jurisdiction thereof.  The Lessee shall not in any
case install any appliances which will overload the
existing wires or equipment in the building.
Anything herein or in subparagraph (b) below to the
contrary notwithstanding, the consent of the Lessor
shall be required for any of the foregoing alterations,
enclosures or additions made by, or the removal
of any additions, improvements or fixtures from
the apartment by a holder of Unsold Shares, which
consent shall not be unreasonably withheld or
delayed.

*Removal of Fixtures*

     (b)  Without Lessor's written consent, the Lessee shall not
remove any fixtures, appliances, additions or improvements from the apart-

20

ment except as hereinafter provided. If the Lessee, or a prior lessee, shall have heretofore placed, or the Lessee shall hereafter place in the apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including but not limited to fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided: (i) that the Lessee at the time of such removal shall not be in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; (ii) that the Lessee shall, at the Lessee's own expense, prior to the termination of this lease, repair all damage to the apartment which shall have been caused by either the installation or removal of any of such additions, improvements, appliances or fixtures; (iii) that if the Lessee shall have removed from the apartment any articles or materials owned by the Lessor or its predecessor in title, or any fixtures or equipment necessary for the use of the apartment, the Lessee shall either restore such articles and materials and fixtures and equipment and repair any damage resulting from their removal and restoration, or replace them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; (iv) that if any mortgagee had acquired a lien on any such property prior to the execution of this lease, Lessor shall first procure from such mortgagee its written consent to such removal, and any cost and expense incurred by the Lessor in respect thereof shall have been paid by the Lessee; and (v) that prior to any such removal, the Lessee shall give written notice thereof to the Lessor.

*Surrender on Expiration of Term*

(c) On the expiration or termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided. Any additions, improvements, fixtures or appliances not removed by the Lessee on or before such expiration

or termination of this lease shall, at the option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee. Any other personal property not removed by the Lessee at or prior to the termination of this lease may be removed by the Lessor to any place of storage and stored for the account of the Lessee without the Lessor in any way being liable for trespass, conversion or negligence by reason of any acts of the Lessor or of the Lessor's agents, or of any carrier employed in transporting such property to the place of storage, or by reason of the negligence of any person in caring for such property while in storage.

### LEASE SUBORDINATE TO MORTGAGES AND GROUND LEASES

22. This lease is and shall be subject and subordinate to all present and future ground or underlying leases and to any mortgages now or hereafter liens upon such leases or on the land and building, or buildings, and to any and all extensions, modifications, consolidations, renewals and replacements thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any such mortgagee or ground or underlying lessee. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages or ground or underlying leases, and the duly elected officers, for the time being, of the Lessor are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

In the event that a ground or underlying lease is executed and delivered to the holder of a mortgage or mortgages on such ground or underlying lease or to a nominee or designee of or a corporation formed by or for the benefit of such holder, the Lessee hereunder will attorn to such mortgagee or the nominee or designee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

64

## MECHANIC'S LIEN

23. In case a notice of mechanic's lien against the building shall be filed purporting to be for labor or material furnished or delivered at the building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to do so within ten days after notice from the Lessor, then the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements, together with interest thereon from the time or times of payment.

## COOPERATION

24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.

## RIGHT OF ENTRY; KEY

25. The Lessor and its agents and their authorized workmen shall be permitted to visit, examine, or enter the apartment and any storage space assigned to Lessee at any reasonable hour of the day upon notice, or at any time and without notice in case of emergency, to make or facilitate repairs in any part of the building or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment and storage space as may be required for any such purpose, but the Lessor shall thereafter restore the apartment and storage space to its proper and usual condition at Lessor's expense if such repairs are the obligation of Lessor, or at Lessee's expense if such repairs are the obligation of Lessee or are caused by the act or omission of the Lessee or any of the Lessee's family, guests, agents, employees or subtenants. In order that the Lessor shall at all times have access to the apartment or storage rooms for the purposes provided for in this lease, the Lessee shall provide the Lessor with a key to each lock providing access to the apartment or the storage rooms, and if any lock shall be altered or new lock installed, the Lessee shall

provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry at any time when an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of the Lessor or an officer of the managing agent of Lessor) may forcibly enter the apartment or storage space without liability for damages by reason thereof (if during such entry the Lessor shall accord reasonable care to the Lessee's property), and without in any manner affecting the obligations and covenants of this lease. The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided.

## Waivers

26. The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provision, option or right shall continue and remain in full force and effect. The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless in a writing expressly approved by the Directors.

## Notices

27. Any notice by or demand from either party to the other shall be duly given only if in writing and sent by certified or registered mail, return receipt requested: if by the Lessee, addressed to the Lessor at the building with a copy sent by regular mail to the Lessor's managing agent; if to the Lessee, addressed to the building. Either party may by notice served in accordance herewith designate a different address for service of such notice or demand. Notices or demands shall be deemed given on the date when mailed, except notices of change of address shall be deemed served when received.

### REIMBURSEMENT OF LESSOR'S EXPENSES

28. If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

### LESSOR'S IMMUNITIES

29. (a) The Lessor shall not be liable, except by reason of Lessor's negligence, for any failure or insufficiency of heat, or of air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone, or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee. No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the building, or any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or to difficulty or delay in securing supplies or labor or other cause beyond Lessor's control, unless due to Lessor's negligence.

### Storage Space and Laundry

(b) If the Lessor shall furnish to the Lessee any storage bins or space, the use of the laundry, or any facility outside the apartment, including but not limited to a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license. The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to Lessee shall be kept by Lessee clean and free of combustibles. If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and

repair and that the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that Lessee may make of such equipment shall be at his own cost, risk and expense.

### Automobiles and Other Property

(c) The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

### WINDOW CLEANING

30. The Lessee will not require, permit, suffer or allow the cleaning of any window in the premises from the outside (within the meaning of Section 202 of the New York Labor Law) unless the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the industrial code of the State of New York is fully complied with; and the Lessee hereby agrees to indemnify the Lessor and its employees, other lessees, and the managing agent, for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

### TERMINATION OF LEASE BY LESSOR

31. If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (j) inclusive of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder

68

shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former estate as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved:

*Lessee Ceasing to Own Accompanying Shares*

(a) If the Lessee shall cease to be the owner of the shares to which this lease is appurtenant, or if this lease shall pass or be assigned to anyone who is not then the owner of all of said shares;

*Lessee Becoming a Bankrupt*

(b) If at any time during the term of this lease (i) the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or (ii) a receiver of all of the property of such holder or of this lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within thirty days; or (iii) such holder shall make a general assignment for the benefit of creditors; or (iv) any of the shares owned by such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within thirty days; or (v) this lease or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection (v) shall not be applicable if this lease shall devolve upon the executors or administrators of the Lessee and provided that within eight (8) months (which period may be extended by the

69

Directors) after the death said lease and shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof; or (vi) this lease or any of the shares to which it is appurtenant shall pass to anyone other than the Lessee herein named by reason of a default by the Lessee under a pledge or security agreement or a leasehold mortgage made by the Lessee;

### Assignment, Subletting or Unauthorized Occupancy

(c) If there be an assignment of this lease, or any subletting hereunder, without full compliance with the requirements of Paragraphs 15 or 16 hereof; or if any person not authorized by Paragraph 14 shall be permitted to use or occupy the apartment, and the Lessee shall fail to cause such unauthorized person to vacate the apartment within ten days after written notice from the Lessor;

### Default in Rent

(d) If the Lessee shall be in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten days after written notice from the Lessor;

### Default in Other Covenants

(e) If the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for thirty days after written notice from the Lessor; provided, however, that if said default consists of the failure to perform any act the performance of which requires any substantial period of time, then if within said period of thirty days such performance is commenced and thereafter diligently prosecuted to conclusion without delay and interruption, the Lessee shall be deemed to have cured said default.

### Lessee's Objectionable Conduct

(f) If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors, at a

meeting duly called for that purpose, that because of objection-able conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, repeated after written notice from Lessor, the tenancy of the Lessee is undesirable; (it being understood, without limiting the generality of the foregoing, that repeatedly to violate or disregard the House Rules hereto attached or hereafter established in accordance with the pro-visions of this lease, or to permit or tolerate a person of dis-solute, loose or immoral character to enter or remain in the building or the apartment, shall be deemed to be objectionable conduct);

### Termination of All Proprietary Leases

(g) If at any time the Lessor shall determine, upon the af-firmative vote of two-thirds of its then Board of Directors at a meeting of such directors duly called for that purpose, and the affirmative vote of the record holders of at least 80% in amount of its then issued shares, at a shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

### Destruction of Building

(h) If the building shall be destroyed or damaged and the shareholders shall decide not to repair or rebuild as provided in Paragraph 4;

### Condemnation

(i) If at any time the building or a substantial portion thereof shall be taken by condemnation proceedings;

### Lessee's Default Under Security Agreement

(j) If Lessee shall default in the payment or performance of any of Lessee's obligations under any pledge or other secu-rity agreement (the "Security Agreement") given a Secured Party (who has complied with the provisions of said Paragraph 17 (b)), and written notice of such default is given to Lessor by the Secured Party or its counsel.

71

LESSOR'S RIGHTS AFTER LESSER'S DEFAULT

32. (a) In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subsections (a) to (f) inclusive or (j) of Paragraph 31, Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account, or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent, in its discretion. Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor shall notify the Lessee that the premises have been relet for the Lessor's own account. The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account. If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting against the Lessee's continuing obligations hereunder. There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment shall have become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate. From and after the date upon which the Lessor becomes obligated to account

to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

### Collection of Rent from Subtenants

(b) If the Lessee shall at any time sublet the apartment and shall default in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee, to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval of any subletting or assignment by the Lessee, or a release or discharge of any of the obligations of the Lessee hereunder.

### Sale of Shares

(c) Upon the termination of this lease under the provisions of subdivisions (a) to (f) inclusive or (j) of Paragraph 31, the Lessee shall surrender to the corporation the certificate for the shares of the corporation owned by the Lessee to which this lease is appurtenant. Whether or not said certificate is surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser is authorized by a resolution of the Directors, or by a writing signed by a majority of the Directors or by lessees owning, of record, at least a majority of the shares of the Lessor accompanying proprietary leases then in force. Upon such issuance the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such shares first, towards the payment of Lessee's indebtedness hereunder (including interest, attorneys' fees and other expenses incurred by the Lessor); second, if said termination shall result pursuant to subdivision

73

(j) of Paragraph 31 by reason of a default under the Security Agreement, towards the payment of Lessee's indebtedness under the Security Agreement (including all costs, expenses and charges payable by Lessee thereunder); and, third, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness due hereunder or (if applicable) under said Security Agreement. Upon the issuance of any such new proprietary lease and certificate, the Lessee's liability hereunder shall cease and the Lessee shall only be liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages.

### Waiver of Right of Redemption

33. The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be dispossessed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning.

### Surrender of Possession

34. Upon the termination of this lease under the provisions of subdivisions (a) to (f) inclusive or (j) of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this lease. Upon the termination of this lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment, or in the building of which it is a part.

### Lessee's Option to Cancel

35. (a) This lease may be cancelled by the Lessee on any September 30th after the third anniversary of the consummation of the Plan

of cooperative organization pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before April 1 in the calendar year in which such cancellation is to occur. At the time of the giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

*Deposits Required*

(i) the Lessee's counterpart of this lease with a written assignment in form required by the Lessor, in blank, effective as of August 31 of the year of cancellation, free from all sub-leases, tenancies, liens, encumbrances, pledges, security interests and other charges whatsoever (except rights of occupancy of third parties existing on the date the Lessor acquires title to the Building);

(ii) the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon;

(iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove. The provisions of this paragraph shall not apply to the holders of unsold shares.

*Removal of Fixtures; Possession*

(b) All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in subdivision (iii) above shall be removed by the Lessee prior to August 31st of the year of cancellation, and on or before said August 31st the Lessee shall deliver possession of the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances, pledges, security interest and other charges and pay to the Lessor all rent, additional rent and other charges which shall be payable under this lease up to and including the following September 30th.

75

*Permission to Show and Occupy Premises*

(c) The Lessor and its agents may show the apartment to pros-
pective lessees, contractors and architects at reasonable times after
notice of the Lessee's intention to cancel. After August 31st or the
earlier vacating of the apartment, the Lessor and its agents, employees
and lessees may enter the apartment, occupy the same and make such
alterations and additions therein as the Lessor may deem necessary or
desirable without diminution or abatement of the rent due hereunder.

*Effective Date of Cancellation*

(d) If the Lessee is not otherwise in default hereunder and if the
Lessee shall have timely complied with all of the provisions of sub-
divisions (a) and (b) hereof, then this lease shall be cancelled and all
rights, duties and obligations of the parties hereunder shall cease as
of the September 30th fixed in said notice, and the shares of Lessor
shall become the absolute property of the Lessor, provided, however,
that the Lessee shall not be released from any indebtedness owing to
the Lessor on said last mentioned date.

*Rights on Lessee Default*

(e) If the Lessee shall give the notice but fail to comply with any
of the other provisions of this paragraph, the Lessor shall have the
option at any time prior to September 30th (i) of returning to the
Lessee this lease, the certificate for shares and other documents de-
posited, and thereupon the Lessee shall be deemed to have withdrawn
the notice of intention to cancel this lease, or (ii) of treating this lease
as cancelled as of the September 30th named in the notice of intention
to cancel as the date for the cancellation of such lease, and bringing
such proceedings and actions as it may deem best to enforce the cove-
nants of the Lessee hereinabove contained and to collect from the
Lessee the payments which the Lessee is required to make hereunder,
together with reasonable attorneys' fees and expenses.

EXTENSION OF OPTION TO CANCEL

36. (a) If on March 30 in any year the total number of shares
owned by lessees holding proprietary leases, who have given notice
pursuant to Paragraph 35 of intention to cancel such proprietary

leases on September 30th of said year, shall aggregate ten percent (10%) or more of the Lessor's outstanding shares, exclusive of treasury shares, then the Lessor shall, prior to April 30th in such year, give a written notice to the holders of all issued shares of the Lessor, stating the total number of shares then outstanding and in its treasury and the total number of shares owned by lessees holding proprietary leases who have given notice of intention to cancel. In such case the proprietary lessees to whom such notice shall have been given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of the intention to cancel such leases shall be given on or before July 1st instead of April 1st.

### *Right of Lessees to Cancel*

(b) If lessees owning at least 80% of the then issued and outstanding shares of the Lessor shall exercise the option to cancel their leases in one year, then this and all other proprietary leases shall thereupon terminate on the September 30th of the year in which such options shall have been exercised, as though every lessee had exercised such option. In such event none of the lessees shall be required to surrender his shares to the Lessor and all certificates for shares delivered to the Lessor by those who had, during that year, served notice of intention to cancel their leases under the provisions hereof, shall be returned to such lessees.

### CONTINUANCE OF COOPERATIVE MANAGEMENT OF BUILDING AFTER ALL LEASES TERMINATED

37. No later than thirty days after the termination of all proprietary leases, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the building as a residential apartment building, (b) to alter, demolish or rebuild the building or any part thereof, or (c) to sell the building and liquidate the assets of the Lessor, and the Directors shall carry out the determination made at said meeting of shareholders of the Lessor, and all of the holders of the then issued and outstanding shares of the Lessor shall have such rights as enure to shareholders of corporations having title to real estate.

UNSOLD SHARES

38. (a)  The term "Unsold Shares" means and has exclusive reference to the shares of the Lessor which were issued to the Lessor's grantor(s) or individuals produced by the Lessor's grantor(s) pursuant to the Plan of cooperative organization of Lessor or Contract of Sale under which the Lessor acquired title to the building or to a nominee of such grantor(s) or individual(s); and all shares which are Unsold Shres retain their character as such (regardless of transfer) until (1) such shares become the property of a purchaser for bona fide occupancy (by himself or a member of his family) of the apartment to which such shares are allocated, or (2)  the holder of such shares (or a member of his family) becomes a bona fide occupant of the apartment.  This Paragraph 38 shall become inoperative as to this lease upon the occurrence of either of said events with respect to the Unsold Shares held by the Lessee named herein or his assignee.  The term "holder of Unsold Shares" wherever used herein shall include a "purchaser of Unsold Shares", such terms being used interchangeably in this lease.

*SUBLETTING APARTMENT AND SALE OF SHARES*

(b)  The subletting of the apartment or the assignment of this lease, by the Lessee who is the holder of the block of Unsold Shares allocated thereto, shall require the consents of the Directors or shareholders, as provided in Paragraphs 15 and 16, provided the same shall not be unreasonably withheld or delayed.

*CHANGE IN FORM OF LEASE*

(c)  Without the consent of the Lessee, no change in form, terms or conditions of this proprietary lease, as permitted by Paragraph 6, shall (1) affect the rights of the Lessee who is the holder of the Unsold Shares accompanying this lease to sublet the apartment or to assign this lease, as provided in this paragraph, or (2) eliminate or modify any rights, privileges or obligations of such Lessee.

- 78 -